NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0543-13T3

MICHAEL WOLFF,

    Plaintiff-Appellant,

v.

SALEM COUNTY CORRECTIONAL
FACILITY and COUNTY OF SALEM,

    Defendants-Respondents.

_____

**APPROVED FOR PUBLICATION**

**January 29, 2015**

**APPELLATE DIVISION**

Argued September 22, 2014 — Decided January 29, 2015

Before Judges Sabatino, Guadagno and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Docket No. L-163-11.

Anthony F. DiMento argued the cause for appellant (Elkind & DiMento, attorneys; Mr. DiMento and Thomas Connelly, on the brief).

Matthew C. Weng argued the cause for respondents (Chance & McCann, L.L.C., attorneys; Mr. Weng, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

In Winters v. North Hudson Regional Fire & Rescue, 212 N.J. 67 (2012), our Supreme Court held that a plaintiff who unsuccessfully raised retaliation as a defense in a disciplinary proceeding was barred by the principles of collateral estoppel

from thereafter raising a retaliation claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Here, plaintiff Michael Wolff appeals from a Law Division order granting summary judgment and dismissing his complaint claiming retaliation in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. The court ruled that, under Winters, supra, 212 N.J. at 96-97, plaintiff's claim was barred because he raised retaliation as an unsuccessful defense in a disciplinary proceeding before an Administrative Law Judge (ALJ). We hold that Winters applies to plaintiff and bars his retaliation claims under N.J.S.A. 10:5-12(d). Accordingly, we affirm.

I.

The following facts can be discerned from the ALJ's opinion, the portion of plaintiff's testimony before the ALJ plaintiff has provided, and the documentary evidence. In 1990, plaintiff became employed as a corrections officer by defendant Salem County Correctional Facility (SCCF), an agency of defendant County of Salem (the County). In January 2009, plaintiff began complaining that Lieutenant Nobles improperly allowed overtime to an officer. Plaintiff is Caucasian, and both Nobles and the officer are African-American. Plaintiff filed "operations/incident" reports raising discrimination in

overtime and complaining that he was "being discriminated against for bringing the problem to light." Plaintiff then raised the issue with Nobles and with Lieutenant Lape, allegedly saying that there was "a cover up about overtime, it's all racial," and claiming that he had been retaliated against in various ways. Nobles and Lape each filed an Employee Disciplinary Offense Report (EDOR) against plaintiff, alleging plaintiff was threatening and insubordinate. Plaintiff then filed reports claiming this too was retaliation in violation of N.J.S.A. 34:19-4 of CEPA, which he called the "Whistleblower Protection Act." The County's Human Resources Office investigated plaintiff's allegations.

The warden of SCCF told plaintiff to appear at a post-investigation meeting on June 15, 2009. On that date, plaintiff met with the sheriff, the warden, a deputy warden, and the Deputy County Administrator (DCA). The DCA read a letter to plaintiff which included the following. The investigation found plaintiff's claims against Nobles and Lape were unsubstantiated. This was plaintiff's third unsubstantiated discrimination complaint, and disciplinary action would be taken if a complaint was intentionally dishonest. The investigation also found plaintiff had violated the County's Workplace Violence Policy during his confrontations with Nobles and Lape. The sheriff and

the County Administration were pursuing disciplinary action, including mandatory training. If plaintiff violated the policy again, the County would take disciplinary action that could include termination.

The warden then read and gave plaintiff a Preliminary Notice of Disciplinary Action (PNDA) regarding his confrontations with Nobles and Lape. The PNDA charged plaintiff with insubordination, conduct unbecoming a public employee, and other sufficient cause. N.J.A.C. 4A:2-2.3(a)(2), (6), (11) (2009).[1] It assessed a 180-hour suspension.

What happened next was disputed. According to the sheriff, warden, and the DCA, plaintiff became agitated and upset. He claimed the "Whistleblowers Act" protected him and was being violated by this "repercussion." He stood up, said they should contact his lawyer, and started to leave. The sheriff, without using profanity, repeatedly instructed plaintiff to sit down. Plaintiff refused. The sheriff warned plaintiff he was being insubordinate, and plaintiff began to return to his chair. However, plaintiff termed the meeting "sh*t" or "bullsh*t." The warden testified he feared plaintiff would attempt to push past the sheriff and cause a physical confrontation. The sheriff and

---

[1] "Other sufficient cause" has since been renumbered as N.J.A.C. 4A:2-2.3(a)(12) (2014).

A-0543-13T3

the DCA testified they felt physically threatened. Plaintiff left the room, calling them "f*cking clowns."

Plaintiff's version of the events differs as follows. When, following his attorney's advice, plaintiff stood up, told them to contact his attorney, and began to leave, the sheriff repeatedly told him to "sit the f*ck down." Plaintiff began to comply, but the sheriff screamed profanities at him, got into his "personal body space," and made physical contact with him several times. The sheriff told him he was terminated, and chased him out of the room. Plaintiff did not use profanity or call the sheriff, warden, or the DCA "f*cking clowns" to their faces. Rather, in the hallway, plaintiff had a loud telephone conversation with his wife in which he used profanity and termed those in the meeting room "f*cking clowns."

On cross-examination before the ALJ, plaintiff testified that he had been retaliated against. In particular, when plaintiff was asked why the DCA would testify adversely to him, plaintiff replied that all of his complaints had alleged violations, not only of overtime policy but also of federal law, "and I threatened to disclose those violations." "[O]nce they started reprising [sic] against me it also made it a [CEPA] violation." Plaintiff elaborated that in all his reports, he had listed not only the overtime violations, but also "the

violation of the whistle blower policy, . . . whistle blower retaliation, [and CEPA] violation." Plaintiff added that the County knew that he would "probably file a [CEPA] law suit [and] I actually believe that is why I was retaliated against."

Further, when asked about being upset at the meeting, plaintiff testified that he "felt that I was in that meeting for a reason that they could get a reaction out of me so that they could get one more insubordination charge because based on the county policy if you have four of the same charges . . . they can terminate you." The insubordination charges regarding Lape and Nobles had given plaintiff a total of three such charges, so "they needed one more insubordination charge to be able to terminate me." Plaintiff "knew they wanted to get me on an insubordination charge so I purposely kept my mouth shut." Rather than "give them what they are looking for I wanted to get out of that office as fast as possible." When he attempted to leave, "they took a desperate attempt to get me to act out."

After a hearing, defendants terminated plaintiff's employment based on the PNDA. Plaintiff requested a hearing before the Office of Administrative Law. The case was assigned to the ALJ, who heard the testimony set forth above. In his decision the ALJ expressly acknowledged plaintiff's assertions "that the charges were brought against him as retaliation

because he was going to file a Whistleblower suit and a complaint with the Department of Labor," that "the County was setting him up," and that the sheriff screamed at him to goad him into committing insubordination so the County could fire him.

The ALJ found plaintiff's testimony regarding what was said in the conference room on June 15, 2009, to be "incredible and unbelievable." The ALJ determined that the sheriff did not scream or use profanity. Rather, the ALJ found plaintiff lost emotional control, used profanity during and after the meeting, and called his superiors "f*cking clowns" as he left the room. The ALJ ruled that this insult, and plaintiff's actions at the meeting, "cannot be countenanced."

Nonetheless, the ALJ found that plaintiff's emotional outburst was just a "vent," and that he made some effort to comply with the sheriff's orders. The ALJ dismissed the insubordination charge, sustained the conduct unbecoming charge, and merged the other sufficient cause charge. The ALJ reduced the penalty from termination to suspension for six months.

The County filed exceptions with the Civil Service Commission.[2] The Commission agreed with the ALJ's findings of

---

[2] Plaintiff filed cross-exceptions, but simply supported the ALJ's decision, which he later termed a "fair resolution."

fact, determination of the charges, and penalty, and also ordered back pay. The Commission upheld the reduction of the penalty, noting that plaintiff's reaction at the meeting "stemmed from his perception that the charges were 'repercussions' for filing his [overtime] complaint." No appellate review was sought of the Commission's final agency decision.[3]

On May 4, 2011, plaintiff filed a complaint in the Law Division, alleging that the County violated N.J.S.A. 10:5-12(d) by retaliating against his complaint of racial discrimination in the distribution of overtime. Plaintiff claimed he was retaliated against when Nobles and Lape filed the EDORs, when the warden and the DCA filed the PNDA against him, during the June 15, 2009 meeting, and in the resulting disciplinary action. Defendants moved for summary judgment, which Judge Robert J. Malestein denied without prejudice on July 27, 2012. Defendants renewed the motion after discovery ended, and the judge again denied summary judgment.

Defendants sought reconsideration, claiming for the first time that plaintiff's suit was barred by issue preclusion under

---

[3] Plaintiff did not return to his position as a corrections officer. Instead, he went on special leave, settled separate litigation against the County involving a prior injury, and received a disability retirement pension.

A-0543-13T3

<u>Winters</u>, which had been decided September 13, 2012.  On August 27, 2013, Judge Malestein granted reconsideration and dismissed plaintiff's complaint.  The judge's written opinion explained that "[b]asic principles, as elucidated by the <u>Winters</u> Court, would preclude relitigation" of plaintiff's retaliation claim.  The judge found that plaintiff had "a full and complete opportunity" to present his retaliation claim to the ALJ, that the issue of retaliation "was clearly raised and considered" in the ALJ proceeding, and that the ALJ implicitly found plaintiff "failed to establish that the discipline was the result of retaliation."  The judge also found that the Law Division suit involved "exactly the same parties and the exact same arguments."

As the judge recognized, <u>Winters</u> reaffirmed that "our courts will accord administrative rulings that otherwise satisfy collateral estoppel standards preclusive effect if the proceedings provide 'significant procedural and substantive safeguards,' similar to those that are provided to litigants in courts of law."  <u>Winters</u>, <u>supra</u>, 212 <u>N.J.</u> at 87 (quoting <u>Olivieri v. Y.M.F. Carpet, Inc.</u>, 186 <u>N.J.</u> 511, 524 (2006)).  <u>Winters</u> noted that civil service proceedings have been held to meet that standard.  <u>See</u> <u>id.</u> at 88 (citing <u>Ensslin v. Twp. of N.</u>

Bergen, 275 N.J. Super. 352, 371 (App. Div. 1994), certif. denied, 142 N.J. 446 (1995)).

Winters reiterated the factors required for issue preclusion. Id. at 85 (quoting Olivieri, 186 N.J. at 521). The judge applied those factors to plaintiff's complaint:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding (retaliation); (2) the issue was actually litigated in the prior proceeding (raised as a defense); (3) the court in the prior proceeding issued a final judgment on the merits (6 months suspension plus payment of backpay); (4) the determination of the issue was essential to the prior judgment (if the [ALJ] believed that the discipline was imposed by employer as a result of retaliation for filing complaints about discrimination there would have been no discipline); and (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

Therefore, the judge concluded that, "just as in Winters, [p]laintiff herein should be prevented from using two separate forums to litigate the same set of facts[.]" The judge granted defendants' motion for summary judgment. Plaintiff appeals.

## II.

Summary judgment must be granted if "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent

evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). As "appellate courts 'employ the same standard that governs the trial court,'" we review these determinations de novo, and the "trial court rulings 'are not entitled to any special deference.'" Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010) (citation omitted). We must hew to that standard of review.

We agree with the reasons given in Judge Malestein's written opinion. We add the following.

### A.

Plaintiff contends that the 2012 Winters decision cannot be applied retroactively, because his disciplinary proceeding before the ALJ was in 2009. However, plaintiff's action in the Law Division was pending when Winters was decided. Thus, the issue before us is whether the Law Division properly looked to the Supreme Court's decision in deciding the reconsideration motion.[4]

---

[4] Because the Law Division case was pending when Winters was decided, we consider only "pipeline retroactivity." Harrison Redev. Agency v. DeRose, 398 N.J. Super. 361, 420 (App. Div. 2008). We have no occasion to consider whether Winters should
(continued)

Generally, a court resolving a legal issue must apply the case law in existence at the time of its decision. "'[T]he general rule applied in civil cases [is] that a new ruling shall apply to all matters that have not reached final judgment.'" Kibble v. Weeks Dredging & Constr. Co., 161 N.J. 178, 192 (1999). Thus, "the 'traditional rule' is that judicial decisions are presumed to apply retroactively" in civil cases. In re Contest of Nov. 8, 2011 Gen. Election of Office of N.J. Gen. Assembly, 210 N.J. 29, 68 (2012). A party seeking to escape that presumption must show the judicial decision "establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Ibid. (internal quotation marks omitted). The court then considers whether retrospective application of the new rule will further its operation, or produce substantial inequitable results. Ibid.

Plaintiff argues that Winters established a new rule of law. However, Winters did not overrule past precedent or decide

(continued)
be granted complete retroactivity, which would make it applicable to cases "'where final judgments have been entered and all avenues of direct review exhausted.'" State v. Colbert, 190 N.J. 14, 23 (2007). That "potentially would expose the judicial system to the undue burden of resolving numerous concluded matters." Olds v. Donnelly, 150 N.J. 424, 450 (1997).

an issue of first impression not foreshadowed by prior cases. See Malinowski v. Jacobs, 189 N.J. 345, 352 (2007). Rather, as set forth above, Winters applied long-standing "general estoppel principles" that bar the relitigation in judicial proceedings of issues decided in administrative proceedings. Winters, supra, 212 N.J. at 85. The Court stressed that "[w]e have recognized that concerns about finality and consistency . . . are applicable to the intersection of judicial and administrative proceedings." Id. at 87 (citing Hennessey v. Winslow Twp., 183 N.J. 593, 599-600, 604 (2005)). Indeed, the Court stated: "We have held that estoppel principles can apply to findings made in administrative proceedings and affect subsequent judicial proceedings. We reaffirm that principle in this matter." Winters, supra, 212 N.J. at 73 (emphasis added) (citing Hennessey, supra, 183 N.J. at 599-600).

Even the dissenter in Winters agreed that, under existing law,

> if a public employee raises retaliation as a defense in an administrative disciplinary proceeding, if he is given a full and fair opportunity to litigate the defense, and if the Office of Administrative Law and the Civil Service Commission adjudicated that defense on the merits adversely to the employee, he may be collaterally estopped from pursuing a CEPA claim.
>
> [Id. at 93 (Albin, J., dissenting).]

The dispute in Winters was whether those things had happened. Ibid. The Court found they had, despite "Winters's litigation tactics to avoid the application of estoppel principles," namely that he "chose not to present proofs to demonstrate his claim of retaliation." Id. at 87, 90. The Court ruled that a "litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, raise a retaliation defense (as plaintiff did here), and then hold back on the defense in an attempt to save it for later duplicative litigation." Id. at 72 (citation omitted).

Plaintiff notes that "prospective application is 'particularly appropriate when a court renders a first-instance or clarifying decision in a murky or uncertain area of the law.'" Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 587 (2012). However, the principles of collateral estoppel applied in Winters were not murky or uncertain, but were "well-settled." Olivieri, supra, 186 N.J. at 521. Winters simply applied those principles to the scenario of an employee "throttling back on his claim of retaliation in the administrative proceeding after having initially raised it." Winters, supra, 212 N.J. at 88.

To show Winters is new law, plaintiff cites the Court's statement: "We therefore put users of the public employment

14                                        A-0543-13T3

system of employee discipline on notice that integration of employer-retaliation claims should be anticipated and addressed where raised as part of the discipline review process." Id. at 74. Defendants argue this means that employees must raise any retaliation claim in the disciplinary proceeding. We need not determine the precise import of the Court's statement, because the Court made clear it did not preclude application of its holding to plaintiffs who do raise retaliation in the disciplinary proceedings. The Court explained: "It is because Winters raised the issue that we differentiate his case from past disciplinary actions that preceded the notice provided in this matter, where an employee might have relied on the fact that retaliation was not an essential part of the employer's case." Id. at 91 n.6 (citing Scouler v. City of Camden, 332 N.J. Super. 69, 74-75 (App. Div. 2000)). Because plaintiff here raised retaliation before the ALJ, it is appropriate to apply the Winters decision.

Furthermore, retrospective application of the Winters decision will advance its goals to avoid "the spectacle, and resulting disrepute, of inconsistent litigated matters involving the same transactional set of facts." Id. at 72-73. It will also prevent "the confounding wastefulness of such a result," and will diminish the "disrespect of the legislatively created

forum for supervision over, and resolution of, public employee discipline in this state."  Id. at 73.  "It is unseemly to have juries second-guessing major public employee discipline imposed after litigation is completed before the Commission to which the Legislature has entrusted review of such judgments."  Id. at 74.

Plaintiff has also failed to show that it would be substantially inequitable to apply Winters to him.  The Court's decision in Winters is even-handed: if in a disciplinary proceeding, an "employee raises a claim that employer retaliation at least partially motivated the decision to bring the charge or the level of discipline sought, then both the employee and employer must live with the outcome, including its potential preclusive effect on related employment-discrimination litigation."  Id. at 73.  As Winters ruled, "it is not unfair to require [plaintiff] to present the defense that he raised in the administrative forum and to accept the consequences of his strategy."  Ibid.

Plaintiff also notes that prospective application is appropriate "when the affected party 'reasonably relied on a plausible, although incorrect, interpretation of the law,' or 'a member of the public could reasonably have relied on a different conception of the state of the law.'"  Selective, supra, 208 N.J. at 587.  Plaintiff argues that he and his counsel relied on

the allegedly different conception of the law before <u>Winters</u>. However, plaintiff has not cited any prior published opinion holding that collateral estoppel would not apply where an employee raised and testified to retaliation at the disciplinary hearing.[5] Nor has plaintiff pointed to anything in the record indicating any such reliance, such as express preservation of a subsequent retaliation lawsuit. Indeed, the sequence of events here — defendant's failure to challenge the rulings of the ALJ and the Commission, his retirement on disability, and then, after more than a year, his filing of this LAD suit — suggests the decision to file the suit occurred long after the ALJ's hearing. Finally, plaintiff has not explained what additional testimony or exhibits he would have presented to the ALJ to prove retaliation had <u>Winters</u> been decided before the disciplinary hearing. "Nothing prevented plaintiff from presenting his defense more fully than he did." <u>Winters</u>, <u>supra</u>, 212 <u>N.J.</u> at 73.

---

[5] Plaintiff cited <u>Thornton v. Potomkin Chevrolet</u>, 94 <u>N.J.</u> 1 (1983), but <u>Thornton</u> involved the different issue of whether the entire controversy doctrine barred presentation before the Division on Civil Rights of a discrimination claim the plaintiff failed to raise in a grievance arbitration. <u>Id.</u> at 3, 5 ("The entire controversy doctrine is not applicable here because there is no comparability between private contractual arbitration and court or administrative adjudications.").

Plaintiff does not assert he would have abandoned any defense of retaliation. Such an assertion would be dubious. As plaintiff's brief admits, the ALJ "could have easily have found that [plaintiff's] reference to [the sheriff, the warden, and the DCA] as 'f[*]cking clowns' constituted insubordination," and thus the grounds for termination. If plaintiff's version of the events at the meeting was disbelieved, as it largely was, his only defense would have been retaliation — the argument that others had not been as severely disciplined, and that severe discipline was sought against him because of his protected conduct. Further, as the Commission noted, plaintiff's misperception of retaliation was viewed as a genesis for his misconduct and a basis to reduce the punishment to suspension.

Therefore, plaintiff has failed to show it was substantially inequitable for the Law Division to apply the law existing at the time of its decision, including the Supreme Court's pertinent opinion in Winters, to decide the pre-trial motion pending before it.

B.

Plaintiff would have us distinguish Winters because it precluded a claim under CEPA, which provides "relief from retaliatory adverse employment action by an employer." Id. at 72. He argues Winters has no application to his complaint under

the LAD. He notes the LAD is much broader than CEPA, because it prohibits discrimination, not merely retaliation.

We need not address whether <u>Winters</u> applies to all LAD claims, because it plainly applies to plaintiff's claim, which is brought under the LAD provision most akin to CEPA. Plaintiff's complaint alleges retaliation in violation of <u>N.J.S.A.</u> 10:5-12(d), the provision of the LAD which makes it unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act[.]" We see no reason why <u>Winters</u> would not apply to a retaliation claim under <u>N.J.S.A.</u> 10:5-12(d) when it applies to a retaliation claim under CEPA.

Plaintiff stresses that the LAD is remedial legislation. However, CEPA is similarly remedial legislation. The Supreme Court in <u>Winters</u> expressly noted its "clear understanding of the important public policy enshrined in CEPA," which is "a very important remedy against wrongful employment practices." <u>Winters</u>, <u>supra</u>, 212 <u>N.J.</u> at 88-89. The Court acknowledged that public employees were protected by CEPA, and by disciplinary procedures including review by an ALJ and the Commission. <u>Ibid.</u>

Nonetheless, the Court emphasized that those two protective systems "can and must be reconciled, and not made duplicative of, irrelevant to, or worst, inconsistent with, one another."

A-0543-13T3

Id. at 89. "In the interest of promoting the public interest in finality and consistency in judicial and quasi-judicial proceedings involving the same transaction," the Court held that Winters was "estopped from proceeding with his CEPA action." Id. at 92. The Court reversed our ruling that collateral estoppel should not apply because "CEPA is remedial legislation." Id. at 84. The same needs for finality, consistency, and reconciliation of the judicial and quasi-judicial systems exists here. Therefore, as the judge ruled, whether the retaliation claim is under CEPA or the LAD, the end result should be the same.

## C.

Finally, plaintiff tries to distinguish Winters factually. He notes Winters "raised his retaliation-themed defense in an opening session with the ALJ and was told to present it as part of his case in chief," and also raised it in his administrative pleadings and argument. Id. at 73, 91. Plaintiff contends that did not occur here. However, plaintiff has not presented us with the transcripts of any portion of the administrative proceeding other than his testimony on the second day of the hearing.[6] Nor has plaintiff supplied us with his administrative

---

[6] Indeed, it does not appear that plaintiff has even presented us with his whole testimony before the ALJ. The transcript
(continued)

pleadings.[7] Plaintiff has failed to provide us with a factual basis to evaluate his contention.

In any event, plaintiff went further in raising a retaliation defense than Winters had. Plaintiff testified before the ALJ that the disciplinary charge served on him at the June 15, 2009 meeting, the allegedly provocative meeting itself, and the subsequent discipline, were all retaliation for his complaints of overtime discrimination. See id. at 91 (finding that "everything Winters pointed to, or at, was supposedly evidence of overall animosity and retaliatory bias").[8] Thus, plaintiff offered far more testimony to support a retaliation defense in the administrative proceeding than Winters, who "chose not to present proofs to demonstrate his claim of retaliation." Id. at 90.

---

(continued)
provided is from the second day of the hearing, appears to start midstream, and does not clearly identify which party's counsel questions plaintiff. Thus, it may omit some or all of plaintiff's direct testimony.

[7] Plaintiff cites the ALJ's prehearing order, which listed the issues to be resolved as the sufficiency of the evidence to sustain the charges, and the appropriate penalty. However, the prehearing order did not address the defenses.

[8] Moreover, plaintiff's testimony was echoed in the evidence before the ALJ that he claimed at the meeting the discipline was a "repercussion," and that his reports claimed retaliation.

A-0543-13T3

Plaintiff argues that retaliation was not a "central theme" of his defense. He refers to the Court's remark about Winters: "Retaliation was a central theme of his argument and that he chose not to present there his comprehensive proof of that claim does not afford him a second bite at the apple in this matter." Ibid. The Court did not state that retaliation had to be a central theme where an employee does present testimonial proof of a retaliation claim, rather than "throttling back" as Winters did. Ibid. The principles of issue preclusion are not limited to the central issue or the only issue in a case, but apply to any issue that "'was actually litigated in the prior proceeding'" if "'the determination of the issue was essential to the prior judgment.'" Id. at 85 (quoting Olivieri, supra, 186 N.J. at 521).

In any event, by presenting testimony to show retaliation, plaintiff made retaliation a more central part of his defense than Winters's unsupported argument. Indeed, if plaintiff's version of events was rejected, retaliation was his only remaining defense for his unacceptable comments. We see no reason why Winters would permit plaintiff a second bite after a more substantial first bite.

Plaintiff claims that he did not "raise" the retaliation defense, because his retaliation testimony came on cross-

examination. However, plaintiff affirmatively raised retaliation in response to neutral questions asking why the DCA would testify adversely to him, and why he was upset at the meeting.[9] After plaintiff thus volunteered a retaliation defense, his counsel did not interpose an objection or move to strike his answers that the employer was retaliating against him. There is no indication in the record supplied to us that plaintiff's counsel requested the ALJ to disregard plaintiff's retaliation testimony. Nor is there any indication plaintiff would have complained if the ALJ had found plaintiff's testimony asserting retaliation to be credible and dismissed the disciplinary charges on that basis. Here, it is sufficient that the retaliation defense was raised in the disciplinary hearing by plaintiff himself, for his own attempted advantage.

Plaintiff contends it was improper to apply <u>Winters</u> because there was no factual basis that "'(1) the issue to be precluded is identical to the issue decided in the prior proceeding; [or]

_____

[9] Thus, we are not faced with the situation where an employer unilaterally and strategically injects retaliation into a disciplinary proceeding by asking the employee on cross-examination: "Do you think that you were retaliated against?" We do not decide whether such a direct query can itself manufacture collateral estoppel barring a future retaliation suit under CEPA or the LAD, particularly where the employee is not represented by counsel, who presumably would be attuned to the legal implications of retaliation testimony. <u>See</u> <u>Serrano v. Underground Utils. Corp.</u>, 407 <u>N.J. Super.</u> 253 (App. Div. 2009).

(2) the issue was actually litigated in the prior proceeding.'" Ibid. The judge properly rejected this contention, pointing out that plaintiff, like Winters, raised retaliation as a defense that the ALJ specifically discussed and "necessarily considered" and rejected. See id. at 91-92.

Like the Court in Winters, we "are fully convinced that the ALJ assessed his claim of retaliation, to the extent it was supported, when he rendered his findings and conclusion," even though "it was not addressed specifically" in the ALJ's conclusions of law. Id. at 91.[10] A "claim that the disciplinary charge was brought in retaliation for [protected conduct] is solely a matter of defense" in a disciplinary proceeding. Scouler, supra, 332 N.J. Super. at 75. In "weigh[ing] the credibility of the employer's allegations of misconduct," the ALJ must consider an employee's allegation that "the supervisor may have had a motive other than the faithful performance of his public duties for filing the charge and testifying against the employee." Ibid. Thus, "evidence of retaliation at a civil service disciplinary hearing" is "critical to a fair and

---

[10] Judge Malestein concluded that the ALJ "did not believe [plaintiff] and clearly did not believe that the defense of retaliation in relationship to the discipline warranted discussion."

reliable evaluation of the credibility of the witnesses testifying in support of the charge." Ibid.

Here, plaintiff initially raised retaliation as a defense response to questions about why defendants' witness would testify contrary to plaintiff's testimony. By asserting retaliation, plaintiff attempted to influence the fact-finding and credibility determinations of the ALJ. As Judge Malestein stressed, the ALJ "did not believe the discipline was retaliatory, [or] he would not have ordered such discipline."

Plaintiff did not appeal the aspects of the ALJ or the Commission's decisions that were adverse to him. In light of that history, Judge Malestein appropriately accepted — and did not second-guess — the ALJ's factual assessments. Those assessments included, at least implicitly, a finding that the employer's witnesses were credible about plaintiff's unbecoming conduct and that they had not disciplined plaintiff for improper retaliatory reasons as he had contended.

The Commission's discussion of retaliation was more limited. That is understandable, as plaintiff did not seek to overturn the ALJ's decision. To the extent plaintiff "did not fully present his defense before the Commission and is now barred from a more expansive presentation of his claim of

[retaliation in a subsequent judicial] action is a consequence with which he must live." Id. at 73.

Plaintiff claims Scouler, not Winters, is the pertinent precedent here. To the contrary, Scouler involved a different statutory provision, and applied it to a different scenario. In Scouler, we held that under the CEPA provision waiving other rights, N.J.S.A. 34:19-8, an "employee who has filed a CEPA action is not precluded from appealing a disciplinary action to the Board simply because the employee alleges that his employer instituted disciplinary charges against him for the same retaliatory reasons alleged in the CEPA action." Scouler, supra, 332 N.J. Super. at 72. Scouler did not consider the application of the principles of collateral estoppel to the scenario of a plaintiff who files a retaliation lawsuit after not appealing a disciplinary ruling in which he unsuccessfully raised retaliation. The Supreme Court subsequently applied those principles to that scenario in Winters. In this case, the judge applied those same principles to an essentially similar scenario. Therefore, Winters, not Scouler, is the controlling precedent here. Id. at 91 n.6.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0543-13T3

**SABATINO, P.J.A.D., concurring.**

I join with my colleagues in affirming summary judgment and the dismissal of plaintiff's retaliation claims under the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -49, based upon principles of collateral estoppel expressed by the Supreme Court in Winters v. North Hudson Regional Fire & Rescue, 212 N.J. 67 (2012).

I write briefly to emphasize that our decision hinges on the fact that plaintiff voluntarily chose to assert retaliation in the course of his testimony in the administrative disciplinary proceedings brought against him by his employer. Neither Winters nor our decision in this case should be construed as signifying that an employee who believes that he or she has been the victim of retaliation is obligated to raise those retaliation claims as a defense in such disciplinary cases. More specifically, I reject this discrete aspect of respondents' argument interpreting Winters to impose such a requirement.

Repeatedly, the Court was very clear in Winters to confine its preclusionary holding to circumstances in which the employee actually "raised" or "posited" retaliation in the administrative

forum.[11]  The Court did not state or even suggest that it would have applied preclusionary consequences if Winters had not, in fact, raised the issue of retaliation in his disciplinary proceeding.

Indeed, it would be inequitable and contrary to the strong anti-discriminatory public policies of the LAD and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -14, to impose such an obligation upon an employee.  To deprive an employee of that choice and mandate that he or she assert and litigate his or her retaliation claims in a disciplinary proceeding brought by the employer would severely curtail the employee's rights under the LAD and CEPA to the important benefits of a Superior Court forum.  Those benefits

---

[11] See, e.g., id. at 71 ("after positing a claim of employer retaliation") (emphasis added); ibid. (noting plaintiff's "defensive theme of employer retaliation") (emphasis added); id. at 72 (a litigant should not be permitted to "raise a retaliation defense" and then "save it later for duplicative litigation") (emphasis added); id. at 73 (where "the employee raises a claim that employer retaliation at least partially motivated the [employer's disciplinary] decision") (emphasis added); ibid. (plaintiff "raised his retaliation-themed defense") (emphasis added); id. at 74 ("integration of employer-retaliation claims should be anticipated and addressed where raised as part of the discipline review process) (emphasis added); id. at 84 ("Winters raised a retaliation defense before the Commission") (emphasis added); id. at 90 (Winters "could not fold his arms . . . on a [retaliation] claim that he has raised") (emphasis added); id. at 90 n.6 ("[i]t is because Winters raised the [retaliation] issue that we differentiate his case from past disciplinary actions that preceded the notice provided in this matter") (emphasis added).

include more expansive discovery, a trial by jury, and the full panoply of remedies available in civil actions brought under those statutes.

In essence, respondents advocate that <u>Winters</u> should be extended from a precedent that enforces principles of collateral estoppel (or "issue preclusion") as to matters that were actually raised and litigated in an administrative forum, to a precedent that imposes the far more extensive consequences of res judicata (or "claim preclusion") to matters that were not raised and litigated, but which could have been. <u>See</u> <u>First Union Nat'l Bank v. Penn Salem Marina, Inc.</u>, 190 <u>N.J.</u> 342, 351-52 (2007) (noting the distinctions between res judicata and the "less demanding" concept of collateral estoppel). In my view, it would be inconsistent with the public policies established by the Legislature in the LAD and CEPA to make that doctrinal leap.

To be sure, if the employee elects to raise retaliation as a defense to a disciplinary action and persuades the administrative tribunal that his or her claims of such employer misconduct are credible, that finding of fact may work to the employee's advantage in a subsequent LAD or CEPA action, based on principles of "offensive" collateral estoppel. <u>See, e.g.</u>, <u>Kortenhaus v. Eli Lilly & Co.</u>, 228 <u>N.J. Super.</u> 162, 164-65 (App. Div. 1988) (explaining the concept of offensive collateral

estoppel). However, if the employee fails to convince the administrative tribunal that retaliation occurred, he or she will presumptively be stuck with that finding later in court. The employee, for whose protection the State's anti-discrimination laws were drafted, should maintain the ability to weigh the risks of these possible outcomes and choose whether or not to raise retaliation in the administrative proceeding.

I agree with my colleagues, for the detailed reasons set forth in Judge Leone's thorough analysis of the record, that plaintiff Wolff in this case sufficiently and voluntarily "raised" in the administrative proceeding his long-standing contentions of retaliation. I am mindful that the retaliation testimony emerged in Wolff's cross-examination rather than during his direct examination. However, as Judge Leone carefully points out, plaintiff asserted his contentions of retaliation in response to a generic question from opposing counsel, and his counsel did not move to strike his testimony or seek to have the administrative law judge ("ALJ") disregard it. Plaintiff was not manipulated, coaxed, or fooled into presenting claims that he did not want the fact-finding ALJ to consider.

Under the circumstances presented, I agree with my colleagues that the collateral estoppel principles of Winters should be enforced here. That said, I would go further than my

colleagues do in footnote nine of the majority opinion, <u>ante</u> at 23, and state my view that more pointed questioning from opposing counsel — strategically designed to inject retaliation issues into the administrative case unilaterally — should not be countenanced.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION