**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3959-21

MICHAEL INGRASSELINO
and DIANNA INGRASSELINO,

     Plaintiffs-Appellants,

v.

MICHAEL FOLIGNO,
individually and in his
capacity as Chief of Police
of the Borough of Elmwood
Park, and BOROUGH OF
ELMWOOD PARK,

     Defendants-Respondents,

and

ROBERT VERRY, individually,

     Defendant.

_____

Argued November 29, 2023 – Decided July 2, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-1051-19.

Kieran M. Dowling argued the cause for appellants (Schiller, Pittenger & Galvin, PC, attorneys; Robert B. Woodruff and Kieran M. Dowling, of counsel; Jay B. Bohn, on the briefs).

Kyle J. Trent and Mary C. McDonnell argued the cause for respondents (Apruzzese, McDermott, Mastro & Murphy, PC, and Pfund McDonnell, PC, attorneys; Arthur R. Thibault, Jr., and Mary C. McDonnell, of counsel and on the brief; Kyle J. Trent on the brief).

PER CURIAM

Plaintiffs Michael Ingrasselino, a former Elmwood Park police officer who was terminated in 2018, and Dianna Ingrasselino, his wife, appeal from an order granting the summary-judgment motion of defendants Borough of Elmwood Park and chief of police Michael Foligno (collectively, defendants) and dismissing their complaint with prejudice. The motion judge granted the motion as to Michael on collateral-estoppel grounds, citing Winters v. North Hudson Regional Fire and Rescue, 212 N.J. 67, 87 (2012), and as to Dianna, finding she was in privity with Michael.[1] We affirm the order as to Michael's claims and reverse it as to Dianna's claims.

---

[1] Because of their shared last name, we use first names when referencing members of the Ingrasselino family for clarity and ease of reading. We mean no disrespect in doing so.

I.

We take these material facts from the summary-judgment record, viewing the evidence in a light most favorable to plaintiffs, the non-moving parties, and drawing all reasonable inferences in their favor. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

Michael began to work for the Elmwood Park police department in 2006. He was terminated on September 24, 2018, pursuant to a Final Notice of Disciplinary Action (FNDA), in which charges of incompetency, conduct unbecoming a public employee, neglect of duty, and other sufficient causes were sustained. Michael appealed the FNDA to the Civil Service Commission (CSC), which transferred the case to the Office of Administrative Law as a contested case.

An administrative law judge (ALJ) conducted a multi-day hearing, during which Michael's attorney presented witnesses on Michael's behalf, including his father and former Elmwood Park police chief Donald and another former Elmwood Park police officer, both of whom testified they believed the charges filed against Michael were a result of bias and harassment. Michael testified at length about various acts of harassment and retaliation he believed he had experienced. Michael's attorney cross-examined the witnesses the Borough had

called in its case, Foligno and an internal-affairs investigator, and in rebuttal to Michael's harassment allegations, including Foligno, who denied having a vendetta against Michael, and other officers, who denied the existence of or having knowledge of any bias against or harassment of Michael.

In a March 16, 2020 Initial Decision, the ALJ rejected Michael's appeal and affirmed his removal. The ALJ noted Donald had been the police chief and "a history of a poor relationship between [Michael's] family and [Foligno], stemming primarily from [Donald] having once disciplined then Captain Foligno." The ALJ acknowledged Michael "had previously complained of workplace harassment by Chief Foligno" and that Michael and his witnesses had "attempted to establish that the case against [Michael] was driven by bias and personal animus of Chief Foligno." The ALJ "found the allegation that the investigation concerning [Michael] was motivated or tainted by personal bias to be not credible." The ALJ also found Michael's "allegations of selective enforcement against [him], evidenced by alleged harassment" to be "fanciful, unsubstantial, and unworthy of further discussion." In a May 1, 2020 Final Administrative Action, the CSC adopted the ALJ's "Findings of Fact and Conclusion," affirmed and found justified Michael's removal, and dismissed his

appeal. We affirmed that final agency decision. <u>In re Ingrasselino</u>, No. A-3445-19 (App. Div. Mar. 29, 2022).

In the midst of the hearing before the ALJ, plaintiffs on February 7, 2019, initiated this lawsuit by filing a complaint in the Law Division, naming as defendants the Borough, Foligno, and Robert Verry, who purportedly was involved in an investigation of Michael. Plaintiffs alleged Donald had taken disciplinary action against defendant Foligno and that when Donald later retired and Foligno became Michael's supervisor, Foligno retaliated against Michael, ultimately leading to charges that resulted in Michael's suspension and termination. Plaintiffs alleged Internal Affairs had contacted Dianna when she was in an advanced state of pregnancy and questioned her about the soundness of Michael's mind, whether he was faithful, and a bird purportedly trained to use the "N" word.

In their first cause of action, plaintiffs claimed defendants, contrary to the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2, had violated Michael's "intimate association" and due-process rights under the New Jersey Constitution and had discriminated or retaliated against him by creating a hostile work environment, specifically referencing his suspension and termination. In their second cause of action, plaintiffs claimed defendants, contrary to the NJCRA,

5

had violated Dianna's "intimate association" and due-process rights under the New Jersey Constitution.  Plaintiffs alleged defendants' actions against Dianna "were based solely on the fact that she" was Michael's wife.  Plaintiffs based the third cause of action on an alleged violation of rights Michael had under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14.  In the fourth cause of action, plaintiffs claimed defendants intended their actions to inflict emotional distress on Dianna.  Plaintiffs voluntarily dismissed their claims against Verry and the third and fourth causes of action of their complaint.

Following the close of discovery and after we issued our opinion affirming the CSC's decision, defendants moved for summary judgment.  After hearing argument, the motion judge granted the motion and dismissed with prejudice plaintiffs' complaint in an order entered on July 28, 2022.  In the accompanying opinion, the judge found the claims plaintiffs had made in this case already had been asserted unsuccessfully by them in the CSC proceedings.  The judge found "[p]laintiffs' assertion that a dispute exists purportedly by asserting more 'facts' about the alleged bias and retaliation is essentially an attempt to get a second bite at the proverbial apple."  The judge held plaintiffs' claims were barred by the doctrine of collateral estoppel and the Supreme Court's decision in Winters, 212 N.J. at 87.  The judge held the collateral-estoppel doctrine also barred

A-3959-21

Dianna's claims even though she was not a party to the CSC proceedings because she was in privity with Michael, given that she was married to him, had the same lawyer as him, and based her claims on his employment relationship with the Borough. This appeal followed.

II.

We review a grant or denial of summary judgment de novo, applying the same legal standard as the trial court. Crisitello, 255 N.J. at 218. That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "We owe no deference to conclusions of law that flow from established facts." Crisitello, 255 N.J. at 218; see also DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 181 (2024) ("When 'only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court.'" (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016))).

7

As to Michael's claims, Winters is directly on point. In Winters, the CSC had affirmed findings of misconduct by and the termination of the plaintiff, a firefighter who claimed his termination was retaliatory. 212 N.J. at 81. While his appeal of that decision was pending, the plaintiff filed a lawsuit in which he alleged, among other things, violations of his free-speech and association rights under the New Jersey Constitution. Id. at 82. The Court reversed our affirmance of the trial court's denial of the employer's collateral-estoppel-based summary-judgment motion. Id. at 82-84, 92. The Court held:

> A litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, . . . raise a retaliation defense (as plaintiff did here), and then hold back on the defense in an attempt to save it for later duplicative litigation.
>
> . . . .
>
> Rather, if an employee and employer engage the system of public employee discipline established by law and the employee raises a claim that employer retaliation at least partially motivated the decision to bring the charge or the level of discipline sought, then both the employee and employer must live with the outcome, including its potential preclusive effect on related employment-discrimination litigation as a matter of the equitable application of estoppel principles.
>
> [Id. at 72-73 (citations omitted).]

A-3959-21

And that is what happened here: Michael was terminated based on findings of misconduct, he claimed in the CSC proceedings his termination was retaliatory, the ALJ and CSC rejected that claim, and now he must live with that outcome. See also Wolff v. Salem Cnty. Corr. Facility, 439 N.J. Super. 282, 289-91 (App. Div. 2015) (applying Winters, court affirms summary judgment granted in favor of defendant employer based on collateral-estoppel doctrine when the plaintiff had unsuccessfully raised retaliation claims in a prior CSC proceeding).

To preclude an issue from litigation, a litigant asserting collateral estoppel must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Winters, 212 N.J. at 85.]

See also In re Borough of Englewood Cliffs, 473 N.J. Super. 189, 202 (App. Div. 2022) (confirming those elements of the collateral-estoppel doctrine). As the motion judge found, each of those elements were met here with respect to Michael's claims.

A-3959-21

Plaintiffs argue defendants did not meet the first element because the CSC stated in its final administrative action it had "accepted and adopted the Findings of Fact and Conclusion as contained in the [ALJ's] initial decision" and, thus, did not decide the "unadopted portion" of the ALJ's decision, which contained his findings regarding Michael's retaliation and harassment claims. We reject plaintiffs' overly-narrow interpretation of the CSC's action. The ALJ's initial decision does not include any section with the title "Findings of Fact and Conclusion" or "Conclusion." The CSC did not reject or modify any portion of the ALJ's initial decision. Had the CSC rejected any of the ALJ's findings of fact or conclusions of law, it was required to "state clearly the reasons for doing so." N.J.S.A. 52:14B-10(c); see also N.J.A.C. 1:1-18.6(b) (requiring agency head to "clearly state the reasons . . . in clear and sufficient detail" for rejecting or modifying an initial decision). The CSC didn't do that. Instead, it clearly and expressly affirmed the decision to terminate Michael and dismissed his appeal in its entirety – a result it could not have reached had it not decided and rejected his harassment and retaliation claims.

Plaintiffs argue defendants did not meet the second element because retaliation claims based on Donald's 2018 complaints regarding "sick-time policy . . . or the double terminal leave payment scheme" were not actually

10

litigated in the CSC proceedings. Contrary to plaintiffs' assertion, Michael testified before the ALJ about his claim Foligno had retaliated against him in response to an anonymous sick-time-policy complaint Foligno believed Michael had sent. Thus, that claim was actually litigated.

As for the remaining retaliation claims Michael could have but did not present in the CSC proceedings, the Supreme Court in <u>Winters</u> rejected a similar argument:

> The question at the heart of this matter is whether the issues in the two proceedings were aligned and were litigated as part of the final judgment in the administrative action. We hold that they essentially were. Winters cannot take advantage of his own tactic of throttling back on his claim of retaliation in the administrative proceeding after having initially raised it. Retaliation was a central theme of his argument and that he chose not to present there his comprehensive proof of that claim does not afford him a second bite at the apple in this matter.
>
> [212 N.J. at 88.]

The motion judge did not err in declining to give Michael a second bite at the apple based on additional evidence of retaliation he chose not to present in support of the claims he made in the CSC proceedings. Like the plaintiff in <u>Winters</u>, "[n]othing prevented plaintiff from presenting his defense more fully than he did." <u>Id.</u> at 73. "That he did not fully present his defense before the

[CSC] and is now barred from a more expansive presentation of his claim [in his civil action] is a consequence with which he must live." Ibid.

Plaintiffs do not challenge the remaining collateral-estoppel elements as to Michael. Instead, they claim the CSC proceedings "were not procedurally sufficient" to support preclusion under the collateral-estoppel doctrine and, thus, Winters does not apply to them. In support of that argument, plaintiffs cite to only one instance in which the ALJ sustained an objection to a question: Michael's attorney had asked Donald about why Donald had not taken away Foligno's benefits when he was suspended. That one ruling, which plaintiffs concede "was not harmful error," did not render the CSC proceedings procedurally insufficient or the collateral-estoppel doctrine or Winters inapplicable, especially when Michael presented evidence in those proceedings that he was the only officer whose health benefits were suspended when his pay was suspended and his attorney had the opportunity to question other witnesses about the suspension of his benefits.

For all of these reasons, we affirm the order granting summary-judgment as to Michael's claims and dismissing those claims with prejudice. We hold otherwise, however, as to Dianna's claims.

12

The judge granted the motion as to Dianna's claims because Dianna was "in privity" with Michael. "A fundamental tenet of collateral estoppel is that the doctrine cannot be used against a party unless that party either participated in or was 'in privity with a party to the earlier proceeding.'" State v. K.P.S., 221 N.J. 266, 277 (2015) (quoting In re Est. of Dawson, 136 N.J. 1, 20 (1994)). "The concept of privity applies 'only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation.'" Id. at 278 (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338 (1996)) (internal quotation marks omitted); see also E.I.B. by I.J. v. J.R.B., 259 N.J. Super. 99, 102 (App. Div. 1991) (finding "[p]rivity generally involves a party to earlier litigation so identified in interest with a party to later litigation that they represent the same legal right"). "[C]ollateral estoppel will not apply if a party did not have a 'full and fair opportunity to litigate the issue.'" K.P.S., 221 N.J. at 278 (quoting Zirger, 144 N.J. at 338). "Simply put, for collateral-estoppel purposes, 'the question to be decided is whether a party has had his day in court on an issue.'" Ibid. (quoting McAndrew v. Mularchuk, 38 N.J. 156, 161 (1962)).

The CSC proceedings did not provide Dianna with her day in court. Dianna's claim – the Internal Affairs's questioning of her somehow violated her

civil rights[2] – was not litigated before the CSC, nor could it have been.  The CSC's role is to decide public-employee disciplinary matters, not claims for monetary damages made by spouses of public employees in civil litigation.  See N.J.S.A. 11A:2-6 and -11 (listing the CSC's powers and duties); Winters, 212 N.J. at 72 (describing the "civil service disciplinary system" as an "administrative system designed to promote a fair and uniform statewide system of public employee discipline").  Because Dianna did not have a full and fair opportunity to litigate her claim in the CSC proceedings, we reverse the order granting summary judgment as to her claims and dismissing them with prejudice.

Defendants contend plaintiffs "failed to identify any substantive right of [Dianna] which was violated."  We do not address that argument and take no position on it because the basis of the summary-judgment motion and decision was collateral estoppel, not failure to state a claim.  See Alloco v. Ocean Beach

---

[2] We understand that claim, set forth in the second cause of action in the complaint, is Dianna's remaining claim.  We note that in their merits brief, plaintiffs describe her claim as "defendants sought to inflict emotional distress upon her based upon her marital relationship with Michael and her familial relationship with her father-in-law, Donald," citing paragraphs seventy-four and seventy-five of the complaint.  (Emphasis in the original).  Those paragraphs, however, appear in the fourth cause of action, which plaintiffs dismissed, as confirmed by plaintiffs' counsel at the beginning of the argument of the summary-judgment motion.

& Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court).

Affirmed as to Michael's claims; reversed as to Dianna's claims; remanded for proceedings consistent with the opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3959-21