275 N.J. Super. 352 (1994)
646 A.2d 452
MARK ENSSLIN, APPELLANT,
v.
TOWNSHIP OF NORTH BERGEN, RESPONDENT. MARK ENSSLIN, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF NORTH BERGEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1994.
Decided July 15, 1994.
*356 Before Judges BRODY, STERN and KEEFE.
Sokol, Behot & Fiorenzo, attorneys for appellant (Philip Scalo, of counsel and on the reply brief; Frank Terranella, on the brief).
Ruderman & Glickman, attorneys for respondent Township of North Bergen (Mark S. Ruderman, of counsel; Ellen M. Horn, on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent Merit System Board, in A-959-92T2 only, has filed a Statement in Lieu of brief (JoAnn Fitzpatrick, Deputy Attorney General, on the Statement).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Mark Ensslin appeals from a determination of the Merit System Board (Board) which approved the Township of North Bergen's (Township) action in terminating Ensslin's employment as a police officer in the Township. The Board found that Ensslin "could not perform the essential duties of his position" and that "accommodation [to his disability] would not be feasible[.] ..." While plaintiff raises several issues on appeal they can be summarized as follows: 1) whether the Township failed to schedule a departmental hearing within the time required under N.J.A.C. 4A:2-2.5(2)(d), and 2) whether the ALJ and Board erred in not considering the effect of the Law Against Discrimination (LAD), or, having done so, whether the Board erred in determining that Ensslin was unable to perform the essential *357 duties of police sergeant and that accommodation for his disability was not feasible.
Ensslin also appeals from the entry of summary judgment in favor of the Township which dismissed his complaint filed in the Law Division alleging that the Township's termination of his employment with the police department constituted discrimination on the basis of handicap, in violation of the LAD. In that suit Ensslin demanded reinstatement, back-pay, consequential and punitive damages, an injunction to render the police building accessible, and attorney's fees and costs. On appeal, Ensslin contends that the trial judge erred in granting summary judgment because there were genuine fact disputes, a prima facie case of handicap discrimination was made out, and there was no reasonable accommodation to Ensslin's handicap. We now consolidate the two appeals and affirm both judgments under review for the reasons stated herein.
In February, 1987, Ensslin was injured in a skiing accident which rendered him a paraplegic. At the time, he was employed as a police officer with the rank of sergeant in the Township. The Township gave him one year's pay, pursuant to the collective bargaining agreement, and kept him on the payroll for an additional five months.
Ensslin was then served with a Preliminary Notice of Disciplinary Action, terminating him from his position as police sergeant effective August 1, 1988. On August 16, 1988, he requested a departmental hearing. However, a few days later the parties agreed to hold the hearing "in abeyance" pending settlement discussions. Apparently, Ensslin was subsequently offered the position of civilian dispatcher. However, when it was thought that he would have to take a competitive examination for such position, negotiations ended.
On May 26, 1989, Ensslin filed a complaint in the Law Division, essentially alleging that his termination was based upon handicap discrimination in violation of the LAD. The first count of the complaint alleged that the Township made no attempt to reasonably *358 accommodate him by assigning him to administrative duties which he could perform despite his paraplegia. In count two, Ensslin alleged that the Township employed other disabled police officers, and that his discharge was a violation of his right to equal protection. In the third count of the complaint, Ensslin alleged that the Township failed to afford him a hearing on his termination, in violation of the parties' collective bargaining agreement and his right to due process. In count four, Ensslin alleged that the Township should have rendered the police building accessible to the handicap when it was remodeled.
The departmental hearing took place on three dates between October 3rd and November 29, 1989. The hearing officer found that Ensslin was unable to perform many of the functions required of a police officer, and that accommodating his handicap would unduly burden the operation of the Township's police department. He concluded that Ensslin should be removed from his employment. As a result, a Final Notice of Disciplinary Action was issued, removing Ensslin from his position effective August 1, 1988. Ensslin appealed that decision to the Board which, in turn, referred the matter to the Office of Administrative Law as a contested case.
An Administrative Law Judge (ALJ) conducted a hearing on thirteen non-consecutive days from May 8, 1990 to November 25, 1991. On June 5, 1992, the ALJ issued her decision. The ALJ found that Ensslin was capable of performing administrative and clerical duties with only slight modifications to the work area, but was unable to intervene in physical situations, such as apprehension and securing of suspects and prisoners. One of Ensslin's duties if he were assigned to permanent duty as a desk sergeant would be to watch prisoners, including the possibility of subduing them, and rendering first aid to them as needed. The ALJ found that such tasks would be "extremely difficult" for Ensslin to perform. The ALJ also found that Ensslin would be unable to meet the criteria for firearms training as promulgated by the Attorney General's guidelines.
*359 With respect to administrative and clerical duties other than that of desk sergeant, the ALJ found that there were a number of positions within the Township police department requiring administrative and clerical duties. However, each of the positions had a component that was neither administrative nor clerical, and required physical duties Ensslin could not perform. The Township conceded that if all of the administrative hours allocated to the several officers who performed them were segregated and amassed, the hours would be sufficient to fill one full-time position. However, as constituted, the Township's police department required and expected each officer, regardless of the officer's assignment, to be capable of responding to "emergency situations" and to be available as a reserve or "back-up" to fellow officers as needed.
At the hearing before the ALJ, Ensslin's position essentially was that his disability, although preventing him from performing all of the functions of a police sergeant, did not prevent him from performing the essential functions of the job with reasonable accommodation. He contended that the Township had a duty to accommodate his handicap, that he could perform the essentials of the job with such accommodation, that the Township failed to observe its duty under the LAD, and, thus, that his termination was illegal.
Ensslin's proof concerning his physical abilities and limitations was offered primarily through the testimony of Barbara Reuven, a Senior Physical Therapist, and Jackie Hu, an Occupational Therapist, at the Kessler Institute for Rehabilitation. Their testimony focused mainly on Ensslin's ability to perform as a desk sergeant with certain accommodations. Physical accommodations to the work area included lowering the heights of the filing cabinets and mailboxes, and raising the height of the desk to make it wheelchair accessible. Those accommodations apparently presented no problem from the Township's standpoint. However, Reuven conceded that, even with such physical accommodations, Ensslin would be unable to perform two tasks set forth in the Township's *360 job description for that position: engaging in physical confrontation with prisoners so as to either prevent physical violence by or against them, and rendering aid to prisoners in medical emergencies. She conceded that both of those tasks would have to be delegated by Ensslin to another officer.
Chief of Police, Angelo Busacco, testified that the duties which Ensslin described he could perform were those of a civilian dispatcher, a position Ensslin was currently performing in Fort Lee. The chief maintained that a police sergeant must be able to perform all of the duties of a police officer as well as the specific physical duties attendant to the job of desk sergeant. He testified that a desk sergeant is not a sedentary position because a sergeant is basically a patrolmen with supervisory capability, who must be able to patrol, inspect operations in the field, back-up other officers, make arrests and respond to calls. He also pointed out that a police officer carries a gun, and is required to respond and take necessary action if an offense is committed whether on or off duty. Further, there was testimony that the Attorney General has strict guidelines for police officers' qualifications for carrying a firearm: the officer must fire 100 rounds from two positions, kneeling and standing. (Ensslin's testimony in this respect was that he could shoot from a standing position if placed in a standing wheelchair and could also shoot from a kneeling position, apparently if placed in that position.)
Chief Busacco maintained that he required every police officer in his department to perform all of the functions of a police officer because the department was understaffed, and that "the delivery of emergency services to the community ... has to be both effective and efficient." He concluded that the ability to effectuate an arrest and take care of unruly suspects was a reasonable, legitimate and necessary part of being a police officer in the Township. Without those functions, the fundamental nature of the job would be changed.
The Board adopted the ALJ's findings of fact, and agreed that termination was warranted. However, it modified the ALJ's *361 determination to the extent that Ensslin is considered to have resigned in good standing. We now address the issues stemming from that determination.

I
Ensslin's claim that reversible error has taken place because the Township failed to provide a hearing as required by N.J.A.C. 4A:2-2.5(2)(d) is without merit. N.J.A.C. 4A:2-2.5(d) requires a departmental hearing within thirty days of the Preliminary Notice of Disciplinary Action, not within thirty days of the employee's request for a hearing. Thus, the lapse of over thirty days between Ensslin's request and the hearing did not constitute a violation of the regulation. Rather, as the ALJ found, Ensslin waived his right to a hearing within thirty days of the Preliminary Notice of Disciplinary Action when he agreed to hold the hearing "in abeyance" pending settlement discussions. His attorney's letter of August 18, 1989 admitted as much. In any event, procedural irregularities at the departmental level are considered "cured" by a subsequent plenary hearing at the agency level. See Appeal of Darcy, 114 N.J. Super. 454, 461, 277 A.2d 226 (App.Div. 1971) (holding that a plenary hearing before the Civil Service Commission cured any deficiencies in the procedural aspects of a prior departmental hearing).

II
Ensslin's contention that the ALJ and the Board failed to consider the provisions of the LAD is also without merit. Specifically, the ALJ phrased one of the issues presented as: "whether or not the police department has an affirmative obligation to accommodate this individual by reorganizing their personnel structure to combine all administrative-type duties which are shared by other positions into one administrative-type position which this individual would be able to perform." Further, by citing Simon v. St. Louis County, Missouri, 735 F.2d 1082 (8th Cir.1984), the ALJ acknowledged the existence of a body of case law pertaining to *362 discrimination against the physically handicapped, and the duty of employers with respect to reasonable accommodation, specifically in the factual context of employment as a police officer. Moreover, the Board's interpretation of the ALJ's findings, its conclusion that Ensslin could not perform "the essential duties of his position" and that "accommodation would not be feasible", and its citation to Greenwood v. State Police Training Center, 127 N.J. 500, 606 A.2d 336 (1992), all reflect an appreciation of the requirements of the LAD as it pertains to termination of a physically handicapped employee.
The critical issue presented by this appeal, as we see it, is whether the ALJ's findings of fact are sufficiently supported by the record and, if so, whether the application of those facts to applicable principles of law justify the Board's conclusion that Ensslin was properly terminated. Despite Ensslin's argument to the contrary, we are satisfied from our review of the record that the ALJ's findings of fact were sufficiently supported by substantial credible evidence in the record. Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Our standard of review also requires us to defer to the judgment of the Board in applying those facts to the relevant legal principles and reverse the Board's decision only if it is arbitrary, capricious or unreasonable. We may not substitute our judgment for that of the Board's so long as it has applied the correct legal principles to the facts. Greenwood, supra, 127 N.J. at 513, 606 A.2d 336 (1992).
The New Jersey LAD provides:
Unless it can be clearly shown that a person's handicap ... would prevent such person from performing a particular job, it is an unlawful employment practice to deny an otherwise qualified handicapped ... person the opportunity to ... maintain employment ... solely because such person is handicapped[.] ...
[N.J.S.A. 10:5-29.1.]
Although no provision of the New Jersey LAD requires it, the regulations promulgated pursuant to the statute provide that "[a]n employer must make a reasonable accommodation to the limitations of the handicapped employee ..., unless the employer can demonstrate that the accommodation would impose an undue *363 hardship on the operation of its business." N.J.A.C. 13:13-2.5(b). The same regulation contains examples of the types of accommodation that an employer should consider, and also contains factors to be considered in determining whether a proposed accommodation would impose an undue hardship on the employer. Each decision concerning the fulfillment of the employer's duty must be made on a "case-by-case basis[,]" ibid., and the decision must be consistent with the principles of general construction imposed by the Legislature. Specifically, the Legislature has provided that the LAD should not be construed
to prohibit the establishment and maintenance of bona fide occupational qualifications ..., nor to prevent the termination ... of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards[.] ...
[N.J.S.A. 10:5-2.1.]
See Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 374, 541 A.2d 682 (1988) (providing that the LAD "must be applied sensibly with due consideration to the interests of the employer, employee, and the public"). "[A]n employer who rejects a job applicant not because of his handicap per se but because of an opinion, reasonably arrived at, that the handicap precludes adequate job performance, ... cannot and should not be found in violation of the Law Against Discrimination." Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 496, 446 A.2d 486 (1982) (quoting Panettieri v. C.V. Hill Refrigeration, 159 N.J. Super. 472, 487, 388 A.2d 630 (App.Div. 1978)). The same is obviously true in a case where an employee was terminated under such circumstances.
Where, as here, an employer maintains that it has reasonably concluded that the employee's handicap precluded performance of the job, and has terminated the employee for that reason, the burden of proof is on the employer. Jansen, supra, 110 N.J. at 383, 541 A.2d 682. The ALJ recognized the employer's burden in this case and appropriately placed it on the Township. In adopting the ALJ's findings, the Board, we assume, did as well.
*364 There is a dearth of New Jersey law on the issue of the employer's obligation to accommodate the physical handicap of an employee. The only reported case which has come to our attention on the duty of accommodation in this State addresses a totally different consideration. See Matter of Cahill, 245 N.J. Super. 397, 585 A.2d 977 (App.Div. 1991) (holding that Cahill, a Newark fire fighter, was properly terminated because he was a substance abuser, and further holding that the employer accommodated his disability by reinstating him upon condition that he submit to routine urine monitoring). However, the New Jersey Division of Civil Rights, when it adopted the regulations implementing the LAD, including the employer's duty to reasonably accommodate a handicapped employee, acknowledged that our regulations were "patterned after" those promulgated under the federal Rehabilitation Act of 1973. 22 N.J.R. 1436.
The Rehabilitation Act prohibits a federally funded State program from discriminating against an otherwise qualified disabled individual solely by reason of his or her disability. 29 U.S.C. § 794. The United States Department of Health and Human Services passed regulations implementing the statute and provided, in 45 C.F.R. § 84.12 (1993), a provision for reasonable accommodation. That regulation, although not worded identically, is substantially the same as N.J.A.C. 13:13-2.5. Therefore, in construing our regulation as it applies to the facts of a given case, it is appropriate to refer to case law interpreting federal law on the same point. Indeed, our Supreme Court has suggested a correlation between State and federal law on handicap discrimination. See Andersen, supra, 89 N.J. at 497 n. 3, 446 A.2d 486 (noting that its interpretation of N.J.S.A. 10:5-2.1 and -4.1 "is consistent with the current construction of the federal employment discrimination legislation").
Thus, the ALJ's citation to and reliance on Simon, supra, was appropriate. In that case, plaintiff, a commissioned county police officer, who was also rendered a paraplegic as a result of an injury, brought an action for reinstatement under the Rehabilitation *365 Act. That act prohibits discrimination where the employee is "an otherwise qualified handicapped individual[,]" essentially the same phrase as used in N.J.S.A. 10:5-29.1. 29 U.S.C. § 794.[1] Although the word "qualified" is not defined in our statute, see N.J.S.A. 10:5-5, it is defined in the federal regulations as "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question[.]" 45 C.F.R. § 84.3(k)(1) (1993). Likewise, the New Jersey regulation concerning accommodation requires an identification of the "essential requirement[s] of a job" in order to determine whether the accommodation sought by the handicapped person would impose an undue hardship on the employer's business. N.J.A.C. 13:13-2.5(b)(3)(iv).
In Simon, the issues before the court were essentially the same as those before the Board here: whether the ability to be able to effect a forcible arrest, render emergency aid, and be freely transferable to all positions in the police department are essential functions of the job in question. The Eighth Circuit held that the trial court's findings that those elements were essential requirements was based on adequate evidence in the record. Simon, supra, 735 F.2d at 1085. Consequently, because no accommodation to the employee's handicap would permit the employee to perform those essential functions, his termination was not unlawful. That is, the employee was not an "otherwise qualified handicapped" individual within the Act.
In School Bd. of Nassau County, Florida v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the United States Supreme Court, quoting Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), defined an "otherwise qualified person" as "`one who is able to meet all of a program's requirements in spite of his handicap.'" Id. at 288 n. *366 17, 107 S.Ct. at 1131 n. 17, 94 L.Ed.2d at 321 n. 17. With respect to the duty to accommodate, the Court held:
Accommodation is not reasonable if it either imposes "undue financial and administrative burdens" on the grantee ... or requires "a fundamental alteration in the nature of [the] program[.]"
[Ibid.]
Further, in Coski v. City and County of Denver, By and Through Denver Police Dept., 795 P.2d 1364, 1367-68 (Colo. App. 1990), the Colorado Court of Appeals, citing Southeastern Community College v. Davis, supra, held that neither a fundamental alteration in the nature of the job, nor the elimination of an essential job function (firing a weapon or making forceful arrest) could be considered a reasonable accommodation. See also, Bellus v. State, 843 P.2d 119, 122 (Colo. App. 1992) ("[n]either a fundamental alteration in the nature of a job nor the elimination of an essential job function is a reasonable accommodation"). This has been the uniform interpretation of the laws in other jurisdictions with laws similar to those in New Jersey. See Shoemaker v. Pennsylvania Human Relations Com'n, 634 A.2d 772 (Pa. Commw. Ct. 1993) (police department was not required to accommodate permanently disabled police officer by creating a light-duty position which would have been a new job description within the police department); Molloy v. City of Bellevue, 859 P.2d 613 (Wash. App. 1993), review den., 123 Wash.2d 1024, 875 P.2d 635 (1993) (permanently disabled police officer did not have to be accommodated by creating a special position within the department for him); Matos v. City of Phoenix, 859 P.2d 748 (Ariz. App. 1993) (a handicapped police officer must, with reasonable accommodation, be capable of performing all of the essential functions of the job for which he was hired, not merely one or two essential tasks, and that the employer need not accommodate the officer by eliminating one or more of the essential functions of the job); Maryland Com'n on Human Relations v. Mayor and City Council of Baltimore, 86 Md. App. 167, 586 A.2d 37 (Md. App.), cert. den. 323 Md. 309, 593 A.2d 668 (1991) (police officer who was unable to perform essential functions of job due to a mental disability was not required to be *367 reasonably accommodated by offering very limited duty position answering telephones).
In this case, the Township's Chief of Police testified that because the department was understaffed, it was necessary to have every department officer available to perform the duties of a police officer if called upon, and that there was no purely administrative duty assigned to any police officer on a permanent basis in the department. Thus, the Board's conclusion that the "apprehension and securing of suspects and prisoners" was an essential duty of Ensslin's position, and that there was no clerical or administrative duty currently available to accommodate his disability, was supported by the evidence. Further, the Board's conclusion that accommodation was not feasible in light of the fact that the employer had no obligation to waive performance of essential functions is consistent with case law on the subject. Finally, there was more than adequate evidence in the case to support the conclusion on an objective basis that Ensslin was physically unable to perform the functions identified as essential. Thus, the standard of proof required by Greenwood, supra, was present in this record.
The final decision of the Merit System Board is affirmed.

III
We now address the issues resulting from the dismissal of Ensslin's action in the Law Division. The Township moved for summary judgment before the ALJ issued her initial decision. In support of its motion, the Township argued that Ensslin failed to make a prima facie case of discrimination because he was not capable of performing the essential functions of the position of police officer, i.e., patrolling, effectuating arrests, subduing prisoners and responding to emergencies. The Township maintained that its police department did not have any positions which were permanently light duty or, in its words, "100% inside or administrative[.] ..." It maintained that any police officer who was assigned some administrative function was expected to be able to, *368 and would, "go out when needed." The Township argued that it was not required to accommodate Ensslin because he would be unable to perform the essential functions of the position even with accommodation. Thus, the Township reasoned that even if Ensslin had made a prima facie case of discrimination, it had set forth legitimate, non-discriminatory reasons for its action. Finally, the Township contended that prior proceedings before the Board precluded Ensslin from bringing an action in the Law Division where the same issues were to be litigated. Ensslin opposed the motion in all respects.
On November 18, 1992, the Law Division judge issued a letter opinion granting the Township's motion. In discussing the Township's arguments of claim and issue preclusion, the judge, citing Hahn v. Arbat Systems Ltd., Inc., 200 N.J. Super. 266, 491 A.2d 58 (App.Div. 1985), held that "issue preclusion should not be applied when dealing with the charge of discrimination ... [because] New Jersey public policy insures complete review and rigorous enforcement in matters of alleged and actual discrimination." However, finding "no material facts genuinely in dispute," the judge said:
Police work is sui generis. On the facts at bar, neither the court nor the doctors can substitute judgment for that of a township in resolving the township's safety needs. Police duty involves the security of the municipality. It is for the municipality to determine what accommodations, if any, should be made for this handicapped police officer.
The judge also found that "[i]t has been `clearly shown' that Ensslin's handicap would prevent him from `performing' his `particular job.' N.J.S.A. 10:5-29.1. This decision renders the alleged violation of N.J.S.A. 52:32-4 (providing facilities for the handicapped) moot."
Further, the judge determined that although defendant had no duty to accommodate plaintiff's handicap, "[i]n any event, there was reasonable accommodation. N.J.A.C. 13:13-2.5." The judge said that he came to his conclusion independently of the decision arrived at by the ALJ and the Board who rendered their decision before him.
*369 As our prior discussion on this subject undoubtedly suggests, we disagree with the Law Division judge's interpretation of the LAD and its relevant regulations. Every employer, including a police department, must demonstrate that the accommodation which the claimant seeks would impose an undue hardship on the operation of its business, and/or that the claimant cannot perform the essential functions of the job, even with the proposed accommodation, and is, thus, not "an otherwise qualified handicapped" person as contemplated by the statute. N.J.S.A. 10:5-29.1. It is imperative in each case to determine what the "essential" requirements of the job are. Such decisions are made on a case by case basis. Here, the parties were in sharp dispute as to what the essential requirements of the job were, and whether the proposed accommodation would either be too burdensome or be insufficient to enable Ensslin to perform the essential requirements of his job. Those factual disputes were genuine and had to be resolved by the ALJ as our prior discussion has indicated. They would be no less genuine in a Law Division proceeding if one were to take place. Thus, we cannot agree with the Law Division judge that there were no genuine fact issues.
However, we hold that the Law Division judge should have granted the Township's motion for summary judgment on the ground of issue preclusion. Generally speaking, a party is precluded by collateral estoppel from relitigating claims or issues which the party actually litigated, were determined in a prior action, and were directly in issue between the parties. Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 26 N.J. 307, 314-316, 139 A.2d 741 (1958). It is now generally recognized that judicial determinations by administrative agencies are entitled to preclusive effect if rendered in proceedings which merit such deference. City of Hackensack v. Winner, 82 N.J. 1, 31-33, 410 A.2d 1146 (1980).
In this case, Ensslin requested the administrative process and raised the LAD and its relevant regulations as a bar to the Township's efforts to terminate him from his position. In doing *370 so, he invoked the jurisdiction of the Board to determine whether he had established a prima facie case of handicap discrimination, whether, with reasonable accommodations, he could perform the essential functions of his job (including a determination of what those essential functions are), and whether the accommodations requested would be unduly burdensome on his employer. In the same proceeding, he also contended that the Township failed to provide a timely hearing as required by N.J.A.C. 4A:2-2.5(2)(d). These were essentially the same issues presented in Ensslin's complaint filed in the Law Division.
There are five exceptions to the general rule of preclusion recognized by the Restatement (Second) of Judgments, § 28 (1982). They are:
(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.
These five exceptions have been recognized in the case law of this State. Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 94, 514 A.2d 53 (App.Div.), certif. denied, 107 N.J. 32, 526 A.2d 126 (1986). We are satisfied from our careful analysis of this record that none of the exceptions applies to this case, and that Ensslin's Law *371 Division action is precluded by the administrative decision issued by the Board. We address each exception separately.
The first exception does not apply because, as is clear from this opinion, Ensslin obtained appellate review of the judgment resulting from the Board's action. The second exception does not apply because the issue involved is not simply one of law. As we stated previously, there is a strong factual component to the question of whether the law against discrimination has been violated by reason of the employer's actions in terminating Ensslin. Further, the two proceedings are substantially related. If Ensslin had succeeded in his administrative action, he would have obtained reinstatement and back pay. Similar remedies would have been available to him under the LAD. See N.J.S.A. 10:5-13, 10:5-17. Further, there is no intervening change in applicable legal principles which justify a separate proceeding in the Law Division.
The third exception does not apply because there are no significant differences in the quality or extensiveness of the proceedings followed in the administrative agency as compared to proceedings in a civil court. Indeed, the testimony submitted to the ALJ was protracted. Ensslin has made no claim that he was barred from offering testimony before the ALJ that he would have been able to submit in the Law Division. An administrative law judge is a "trained and independent hearing officer[]." Zoneraich, supra, 212 N.J. Super. at 96, 514 A.2d 53. The procedural due process afforded by the Office of Administrative Law and the caliber of its hearing officers place those proceedings on a par with plenary judicial proceedings. Compare Taha v. DePalma, 214 N.J. Super. 397, 519 A.2d 905 (App.Div. 1986) (where preclusive effect was not given to an arbitrator's decision in a statutory auto arbitration proceeding because those proceedings were not intended as "a substitute for litigation").
The fourth exception does not apply because the burden of persuasion with respect to justification of Ensslin's termination was placed on the employer in the administrative proceeding. The same burden would be placed on the employer in a Law *372 Division proceeding under the LAD. Thus, there has been no shifting of burdens to the disadvantage of Ensslin.
The fifth exception does not apply because there is no potential impact on the public interest resulting from giving the administrative decision preclusive effect. Only Ensslin's interests are affected by the judgment. Any other claim against the Township for handicap discrimination would have to be addressed on a case-by-case basis as recognized in the regulations previously quoted. Further, because Ensslin initiated the administrative action in which he raised the protection of the LAD and simultaneously initiated the Law Division action, it was obviously foreseeable to him, or his attorney, that identical issues would arise in the context of both actions. Further, because Ensslin initiated the administrative review action and sought the ALJ's determination on the discrimination issues, Ensslin had the incentive to develop those issues fully and, in fact, did so without undue restriction by the ALJ.
It is important to reiterate that this is not a situation in which Ensslin was forced to litigate his discrimination claim in a setting not of his choice. He was under no compulsion to contest his termination under the procedures afforded him through the review procedures afforded by the Department of Personnel. Ensslin contended from the beginning that his termination was a violation of the LAD. Under the LAD, he had the right to initiate suit in Superior Court without going through any administrative procedure as a prerequisite. N.J.S.A. 10:5-13.
We believe that the holding in Hahn, supra, upon which the Law Division judge relied, can be best explained in the context of the five exceptions to preclusion set forth in Zoneraich, supra, and that the holding of Hahn must be limited to the facts of that case. Hahn involved an administrative hearing before the Division of Unemployment Compensation where the hearings are conducted in an informal fashion by a hearing officer, not an ALJ. Although discrimination was put in issue by the plaintiff in that case, and it was stipulated that the plaintiff was not denied the opportunity to *373 present evidence on that point, it is not clear whether she was represented by counsel in the administrative proceeding. Further, the Appellate Division was not afforded an opportunity to compare the development of the discrimination issue in the administrative proceeding because the administrative record was not available for review. Finally, the remedies sought by plaintiff in the administrative proceeding were substantially different from the remedies sought by her in the civil proceeding. Thus, we conclude that Hahn is factually inapposite to this case and was not binding on the trial judge.
To the extent that Hahn can be read to hold that collateral estoppel cannot be applied in any case dealing with a charge of discrimination, we disagree with its holding. We find nothing in the LAD, its regulations, or the case law of this State which mandates as a matter of public policy that separate litigation in a civil court is required where discrimination is in issue. Indeed, the LAD expresses the opposite view. Where a party elects under the LAD to proceed administratively on the complaint filed with the Division of Civil Rights, the complainant may request a hearing in the Office of Administrative Law where probable cause has been found. N.J.S.A. 10:5-13. The language of the LAD makes clear that the Legislature believed a proceeding before an ALJ provided an appropriate forum for hearing discrimination claims.
Further, to the extent that the Law Division judge believed that the Supreme Court's decision in Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983), cited in Hahn, supports the general proposition that issue preclusion stemming from an administrative proceeding is not available where there is a Superior Court claim for discrimination, his reliance was misplaced. Thornton stands for the proposition that the entire controversy doctrine cannot preclude a litigant from asserting a claim for discrimination before the Division on Civil Rights simply because the claimant failed to raise employment discrimination as an issue in a grievance arbitration proceeding where the claimant was represented by a union *374 official. Succinctly stated, the Court held: "[t]he entire controversy doctrine is not applicable here because there is no comparability between private contractual arbitration and court or administrative adjudications. The doctrine presumes forums of equal jurisdiction." Id. at 5, 462 A.2d 133 (emphasis added). Although the Court referred to the concept of "public interest[,]" its reasoning was based upon the motivation of a State administrative agency to implement the policy of the LAD, in contradistinction to an arbitrator's function in simply resolving labor disputes. Id. at 5-6, 462 A.2d 133.
An important consideration in applying issue preclusion in this litigation, in addition to those already discussed, is the desirability of avoiding a conflict in the results stemming from litigation of the very same issues in two different tribunals. See City of Hackensack v. Winner, supra, 82 N.J. at 32-33, 410 A.2d 1146 (recognizing that elimination of conflicts, confusion and uncertainty are important policy considerations supporting the application of issue preclusion in appropriate cases). In this case, not only are the issues identical, but the remedies sought by Ensslin are essentially identical as well. As a result of our affirmance of the Board's decision, the Township's decision to terminate Ensslin is vindicated, and the Township incurs no monetary burden. In contrast, if Ensslin were successful in his Law Division action, the very same remedies which plaintiff sought and failed to obtain in the administrative process could be imposed on the Township, notwithstanding that the Township was exonerated in a full, fair and impartial hearing. We are unpersuaded that any concept of public policy should permit that result.
Thus, the judgment of the Law Division dismissing Ensslin's complaint is affirmed but for reasons other than those stated by the Law Division judge.
NOTES
[1] The language of 29 U.S.C. § 794 was amended in 1992. The amendment does not affect this analysis.