**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3885-17T3

TRACY ESKRIDGE-JOSEPH,

    Plaintiff-Appellant,

v.

NEW JERSEY ADMINISTRATIVE
OFFICE OF THE COURTS,

    Defendant-Respondent.

_____

> Submitted June 4, 2019 – Decided July 11, 2019
>
> Before Judges Rothstadt and Gilson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1606-15.
>
> Koller Law, LLC, attorneys for appellant (David M. Koller, on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Agnes I. Rymer, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Tracy Eskridge-Joseph is a child support hearing officer (CS Hearing Officer) employed by the State of New Jersey Judiciary (Judiciary) and supervised by the Administrative Office of the Courts (AOC). She sued the AOC alleging age and race discrimination under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Specifically, plaintiff complained that disciplinary actions taken against her were discriminatory.

Plaintiff appeals from a March 20, 2018 order granting summary judgment to the AOC and dismissing with prejudice her complaint. She also appeals from an April 30, 2018 order denying her motion for reconsideration. We affirm because the AOC established legitimate, non-discriminatory reasons for its discipline of plaintiff, and plaintiff failed to show that the AOC's stated reasons were pretextual.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiff. Plaintiff was hired in September 2000, as an "Administrative Specialist 4," working as a CS Hearing Officer. CS Hearing Officers hear child support matters and uncontested cases to establish paternity. They take testimony, review documents, consider evidence, and make recommendations to Superior Court judges to establish, modify, and enforce

2

support obligations. CS Hearing Officers are required to be in their assigned rooms and ready to start their morning calendars by 9 a.m. each hearing day. If a CS Hearing Officer is running late, she or he is required to call or send a text to the Child Support Hearing Officers Unit (CSHOU) to let the unit know of the delay.

In 2013 and 2015, the AOC charged plaintiff with major disciplinary violations concerning incidents in 2013 and late 2014. In both situations, the disciplinary charges were ultimately substantiated and plaintiff was subject to suspensions.

On March 14, 2013, plaintiff was assigned to hear child support cases in the Mercer County Courthouse. When she arrived at the courthouse, a sheriff's officer asked plaintiff to sign in and obtain an access card. Plaintiff refused. Later that day, plaintiff referred to two sheriff's officers in derogatory terms. She also had a confrontation with a sheriff's officer who informed her that she had violated courthouse security procedures and, in response, plaintiff threw an access card at the officer.

Based on that March 2013 incident, the AOC sent plaintiff a notice of major disciplinary action. The notice charged plaintiff with conduct unbecoming an employee, failure to perform duties, insubordination, misuse of

property, neglect of duty, and violation of the Judiciary Code of Conduct, Canon 1B. Plaintiff requested and was granted a departmental hearing on those charges. In July 2014, a hearing officer issued a recommended decision, finding that the charges against plaintiff had been proven and recommending that plaintiff receive a six-month suspension as a penalty. That recommended decision was accepted by the administrative director of the AOC and, in July 2014, plaintiff received a final notice of disciplinary action.

Plaintiff and her union administratively appealed the final notice of disciplinary action. Thereafter, on October 2, 2014, plaintiff, her union, and the AOC entered into a settlement agreement to resolve plaintiff's 2013 disciplinary charges (the 2014 Settlement Agreement). As part of the 2014 Settlement Agreement, plaintiff admitted she had committed the charges. In exchange, the AOC agreed to reduce her penalty from a six-month suspension to a sixty-day suspension. The 2014 Settlement Agreement also contained a "last chance" provision, which stated that any future incident that involved similar misbehavior would be grounds for plaintiff's dismissal. Plaintiff also waived her appeal rights and provided the AOC with a general release. Thereafter, the AOC issued an amended final notice of major disciplinary action that reflected the terms of the 2014 Settlement Agreement.

Shortly after the execution of the 2014 Settlement Agreement, plaintiff became involved in another disciplinary incident. On five dates in November and December 2014, plaintiff was charged with arriving late for her hearings. Moreover, on one of those dates, when plaintiff was questioned by a supervisor concerning her tardiness, she was not candid with her supervisor.

In January 2015, the AOC issued plaintiff a preliminary notice of disciplinary action based on her conduct in November and December 2014. Specifically, plaintiff was charged with conduct unbecoming an employee, insubordination, neglect of duty, and violation of Judiciary Code of Conduct, Canon 1B. The notice further advised plaintiff that the AOC was seeking her termination based on those charges. The AOC also suspended plaintiff without pay.

Plaintiff requested and was granted a departmental hearing. In July 2015, a hearing officer issued a recommended decision finding the AOC had proven the charges against plaintiff and recommending that her employment be terminated. That same month, the administrative director of the AOC issued a final notice of disciplinary action, accepting and implementing the hearing officer's recommendations. Plaintiff was notified that her employment was terminated effective January 12, 2015.

A-3885-17T3

Plaintiff administratively appealed the final notice of disciplinary action. Thereafter, an arbitrator for the Public Employment Relations Commission (PERC) conducted an arbitration hearing on the disciplinary charges. In May 2016, the PERC arbitrator issued an advisory opinion recommending that the AOC did not have just cause to remove plaintiff from her employment. Instead, the PERC arbitrator recommended that plaintiff receive a one-day suspension for her conduct.

In July 2016, the administrative director of the AOC rejected the PERC arbitrator's advisory opinion. Instead, the director found that plaintiff was guilty of conduct unbecoming an employee, insubordination, and violating Canon 1B of the Judiciary Code of Conduct. The director decided, however, not to terminate plaintiff. Rather, the director suspended plaintiff for sixty days and reinstated her to the position of CS Hearing Officer with mitigated back pay, seniority, and benefits, less the sixty-day suspension.

While the 2015 disciplinary charges were being prosecuted, plaintiff filed a complaint against the AOC. Specifically, on November 9, 2015, plaintiff filed a complaint alleging that the AOC had violated LAD. In that regard, plaintiff alleged that the AOC discriminated against her based on her race and age, as an African-American woman who was over the age of forty. The complaint cited

only two adverse employment actions: (1) the disciplinary action based on the March 2013 incident; and (2) the disciplinary action based on the November and December 2014 incidents. The complaint was filed after the AOC had removed plaintiff as a CS Hearing Officer, and before the PERC arbitration hearing. Thus, the complaint alleged that plaintiff's removal was discriminatory.

Initially, the AOC filed a partial motion to dismiss the complaint as it related to the 2013 incident. In an order dated May 13, 2016, the trial court granted that motion and dismissed with prejudice any claims arising from the 2013 disciplinary matter. The court found that the 2013 incident was subject to the release contained in the 2014 Settlement Agreement.

Thereafter, the AOC filed an answer and the parties engaged in discovery. In February 2018, the AOC filed a motion for summary judgment in accordance with a schedule set by the trial court. Plaintiff did not file written opposition to that motion. Instead, on February 21, 2018, plaintiff filed a motion to compel production of certain audio recordings of her CS hearings.

On March 16, 2018, the trial court heard oral argument on both the motion for summary judgment and the motion to compel. Following those arguments, on March 19, 2018, plaintiff submitted a letter brief in opposition to the AOC's motion for summary judgment. The plaintiff did not, however, submit any

7

certification or a statement in opposition to the AOC's statement of undisputed material facts.

On March 20, 2018, the trial court issued two orders and two written opinions. In one order, the court denied plaintiff's motion to compel the audio recordings. In the other, the court granted summary judgment to the AOC and dismissed with prejudice plaintiff's complaint.

In the written opinion accompanying the summary judgment order, the trial court set forth its reasons for granting summary judgment to the AOC. Initially, the trial court noted that plaintiff had failed to oppose the AOC's motion for summary judgment, and in particular, plaintiff had submitted no evidence disputing the AOC's statement of undisputed material facts. Nevertheless, the trial court analyzed the merits of plaintiff's arguments and granted summary judgment to the AOC on four grounds.

First, the court found that plaintiff, through her LAD complaint, was essentially disputing and seeking to challenge the disciplinary actions imposed on her in connection with her tardiness and lack of candor in November and December 2014. Consequently, the trial court reasoned that it lacked jurisdiction over the LAD complaint because plaintiff's exclusive appeal right from a final administrative decision was to take an appeal to us, the Appellate

Division.  In support of that ruling, the court cited <u>Rule</u> 2:2-3(a)(2) and our

Supreme Court's decision in <u>Winters v. North Hudson Regional Fire & Rescue</u>,

212 N.J. 67 (2012).

Second, the trial court found that plaintiff's claims in her LAD complaint

were barred by the 2014 Settlement Agreement.  In that regard, the court

reasoned that plaintiff had provided the AOC with a broad release that covered

her claims in her LAD complaint.

Third, the trial court found that plaintiff's LAD claims were also barred

by the doctrine of collateral estoppel based on the findings that had been made

in the AOC disciplinary actions against her.  Again, the trial court cited and

relied on the Supreme Court's decision in <u>Winters</u>.

Finally, the trial court found that plaintiff failed to set forth a prima facie

case of race or age discrimination under LAD.  Specifically, the trial court found

that plaintiff had failed to make a prima facie showing that she had performed

her job at a level that met her employer's legitimate expectations.

Plaintiff filed a motion for reconsideration of the summary judgment

order.  In a written opinion and order issued on April 30, 2018, the trial court

denied that motion.  Plaintiff now appeals from the March 20, 2018 order

granting the AOC summary judgment and the April 30, 2018 order denying her motion for reconsideration.

## II.

On this appeal, plaintiff makes four arguments.  She contends that the trial court erred because (1) she was not appealing from the final administrative decision concerning her disciplinary actions and, therefore, the trial court had jurisdiction to hear her LAD claims; (2) the 2014 Settlement Agreement did not bar her LAD claims; (3) her claims are not barred by the doctrine of collateral estoppel; and (4) she established a prima facie case of age and race discrimination under LAD.  We are not persuaded by these arguments.

We review a grant of summary judgment using the same standard that governs the motion court's decision.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c).  "An issue of material fact is 'genuine only if,

considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion court's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)); Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We need not reach all of the issues raised by plaintiff. Instead, conducting a de novo review of the record and applying well-established law, we hold that the trial court did have jurisdiction over the LAD claims. We also hold that the AOC was entitled to summary judgment because it established legitimate, non-discriminatory reasons for the disciplinary actions and plaintiff failed to present any evidence that would allow a factfinder to conclude that the AOC's stated reasons were pretextual.

A.    Jurisdiction

First, we clarify that the trial court did have jurisdiction over plaintiff's LAD claims. An employee is estopped from pursuing discrimination claims in the Superior Court when that employee has already unsuccessfully raised

discrimination as a defense during an administrative hearing. See Winters, 212 N.J. at 92; Wolff v. Salem Cty. Corr. Facility, 439 N.J. Super. 282, 297 (App. Div. 2015); Long v. Lewis, 318 N.J. Super. 449, 455-56 (App. Div. 1999); Ensslin v. Twp. of N. Bergen, 275 N.J. Super. 352, 369-71 (App. Div. 1994).

In Winters, our Supreme Court held that a plaintiff who unsuccessfully argued retaliation as a defense in a disciplinary proceeding was collaterally estopped from thereafter bringing a retaliation claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. 212 N.J. at 92. In reaching that conclusion, the Court explained that "[a] litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, raise a retaliation defense . . . , and then hold back on the defense in an attempt to save it for later duplicative litigation." Id. at 72 (citation omitted).

In Wolff, we applied the Winters analysis to claims of retaliation brought under LAD. Wolff, 439 N.J. Super. at 297. We affirmed the grant of summary judgment after finding the plaintiff had raised retaliation as an unsuccessful defense in his prior disciplinary proceeding. Id. at 300-01.

If, however, an employee does not raise discrimination as a defense in an administrative proceeding, the employee, thereafter, may be permitted to pursue

12

a LAD claim in the Superior Court. See Ensslin, 275 N.J. Super. at 372-73; Long, 318 N.J. Super. at 456. In that regard, in Ensslin, we explained that an employee has two options for pursuing a discrimination claim. The employee can either file the LAD claim in the Superior Court or elect to present the discrimination in an administrative proceeding. See 275 N.J. Super. at 372-73. Similarly, in Long, we relied on the principle that "[c]ollateral estoppel only bars relitigation of issues that were actually litigated" and held that an employee who chooses not to raise discrimination as a defense in an administrative proceeding is free to later sue her employer for unlawful discrimination under LAD. 318 N.J. Super. at 456-57. See also Wolff, 439 N.J. Super. at 301 (explaining that the plaintiff's claims were collaterally estopped because he voluntarily chose to assert retaliation in the course of the administrative disciplinary proceedings (Sabatino, P.J.A.D., concurring)).

In summary, Winters, Wolff, Ensslin, and Long do not require an employee to raise a discrimination or retaliation defense in a disciplinary proceeding. If the employee does raise the defense, then a subsequent claim in the Superior Court will be collaterally estopped. If, in contrast, the discrimination claim is not raised in the administrative disciplinary proceedings, then the employee can later raise the claim under LAD or CEPA. See Winters,

212 N.J. at 91-92; Wolff, 439 N.J. Super. at 298; Long, 318 N.J. Super. at 455-56; Ensslin, 275 N.J. Super. at 370-71.

Here, plaintiff argues that she did not present her discrimination claim during the 2013 or 2015 disciplinary proceedings. In that regard, plaintiff relies on a statement made by her union representative during the arbitration proceeding that plaintiff's discrimination claims were "not part of" that proceeding. Moreover, before the 2015 disciplinary proceedings were concluded, plaintiff filed her LAD claims in the Superior Court. Importantly, there is no evidence in the record demonstrating that the issue of discrimination was actually litigated during plaintiff's disciplinary proceedings. The hearing officer's July 7, 2015 written recommendations did not reference such a defense. The PERC arbitrator's advisory opinion also did not reference such a defense. Finally, the director of the AOC's July 13, 2016 decision did not mention or analyze a claim of discrimination.

Consequently, on this record for summary judgment, we do not find that there are undisputed facts establishing that plaintiff had raised a defense of discrimination in her disciplinary proceedings. Accordingly, we do not affirm the summary judgment ruling on that ground. Moreover, we hold that both the

A-3885-17T3

trial court and we have jurisdiction over plaintiff's LAD claims.  Accordingly, we turn to an analysis of those LAD claims.[1]

B.    Plaintiff's LAD Claim

LAD makes it illegal for an employer to discriminate against an employee based on his or her age or race.  N.J.S.A. 10:5-12(a).  LAD discrimination claims follow the procedural burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Tisby v. Camden Cty. Corr. Facility, 448 N.J. Super. 241, 248 (App. Div. 2017) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005)).  That burden-shifting paradigm first requires the plaintiff to demonstrate a prima facie case of unlawful discrimination.  Ibid. (citing Victor v. State, 203 N.J. 383, 408 (2010)).  A prima facie case is made by showing:

> (1) plaintiff belongs to a protected class; (2) she [or he] was performing her [or his] job at a level that met her [or his] employer's legitimate expectations; (3) she [or he] suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions.

---

[1]  We do share the trial court's skepticism of plaintiff's tactics.  Plaintiff had requested and received a departmental hearing officer's review of her 2015 disciplinary charges.  It was only after the hearing officer issued a ruling adverse to plaintiff on July 7, 2015, that plaintiff filed her LAD action in the Superior Court in November 2015.  Thus, the reservation of rights the union official made before the PERC arbitrator occurred after plaintiff already had an adverse decision against her.

[Ibid. (quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 167 (App. Div. 2005)).]

After a plaintiff presents a prima facie case, "an 'inference of discrimination' is created." Ibid. (quoting Zive, 182 N.J. at 449). An employer can then rebut that inference "by articulating a 'legitimate, nondiscriminatory reason for the employer's action.'" Id. at 248-49 (quoting Zive, 182 N.J. at 449). Where an employer does so, the burden "shifts back to the employee to prove the reason provided by the employer is 'merely a pretext for discrimination and not the true reason for the employment decision.'" Id. at 249 (quoting Zive, 182 N.J. at 449).

A plaintiff can prove pretext by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). An employer "is entitled to summary judgment if plaintiff is unsuccessful in this last step." Tisby, 448 N.J. Super. at 249 (citing Zive, 182 N.J. at 456).

Here, the AOC was entitled to summary judgment because it articulated legitimate, non-discriminatory reasons for its disciplinary actions and plaintiff failed to present any evidence that those reasons were pretextual. As previously noted, in her complaint, plaintiff only identifies two adverse employment actions: (1) the discipline she received in connection with the 2013 incident, and (2) the discipline she received in connection with the 2014 incidents.

Initially, it should be noted that plaintiff has not appealed from the dismissal of her LAD claims as they relate to the 2013 disciplinary incident. In her complaint, she made allegations concerning the 2013 disciplinary incident, but she now concedes that such allegations are merely "background." More substantively, she does not contest that the 2014 Settlement Agreement released all claims related to the 2013 disciplinary incident and, thus, her LAD claims cannot be based on that incident.

Accordingly, plaintiff can only rely on the discipline that arose out of the incidents in late 2014. In moving for summary judgment, the AOC submitted evidence establishing the basis for the discipline plaintiff received as a result of the 2014 incidents of tardiness. In that regard, the factual findings set forth in the director's July 13, 2016 final administrative decision established that there was a basis for disciplining plaintiff for starting her hearings late on four

occasions and for plaintiff's lack of candor to a supervisor in connection with the November 26, 2014 tardiness incident. Consequently, the AOC articulated legitimate, non-discriminatory reasons for disciplining plaintiff.

Plaintiff submitted no evidence from which a factfinder could disbelieve the AOC's articulated legitimate reasons or find that there was a discriminatory reason motivating the discipline of plaintiff. Indeed, as already pointed out, plaintiff submitted no evidence disputing any of the AOC's undisputed material statements of fact. Accordingly, the AOC was entitled to summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3885-17T3