**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4797-18T2

DARIN MCCLENNY,

    Plaintiff-Appellant,

v.

PBA LOCAL 105, NJ STATE
POLICEMEN'S BENEVOLENT
ASSOCIATION,

    Defendant-Respondent.

_____

Argued October 14, 2020 – Decided   November 25, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1345-17.

Samuel J. Halpern argued the cause for appellant.

Arthur J. Murray argued the cause for respondent (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel; Arthur J. Murray, on the brief).

PER CURIAM

Plaintiff Darin McClenny appeals from an order granting summary judgment to defendant PBA Local 105 (PBA) and dismissing his complaint, which alleged that PBA breached its duty to fairly represent him at a disciplinary proceeding that resulted in his termination. Following the close of discovery, plaintiff had no evidence establishing that he had a defense to the disciplinary charge. Moreover, a governing policy issued by the Attorney General required that he be fired. Accordingly, we affirm.

I.

We take the facts from the summary judgment record, noting that the parties agree that the material facts relevant to summary judgment are not in dispute. Plaintiff was employed as a senior corrections officer for the Department of Corrections (DOC). In December 2014, he was charged with violating regulations and DOC rules because he tested positive for cocaine in his urine following a random drug test. The notice of discipline sought to terminate his employment.

Following a departmental hearing, the charges were sustained, and plaintiff was served with a final notice informing him that his employment with DOC was terminated. Plaintiff filed an administrative appeal, requesting a hearing before an administrative law judge (ALJ) in the Office of Administrative

Law (OAL). As a civil service employee, plaintiff was entitled to a de novo hearing before an ALJ. Ensslin v. Twp. of N. Bergen, 275 N.J. Super. 352, 361 (App. Div. 1994).

PBA, which is the collective bargaining unit for DOC corrections officers, agreed to represent plaintiff in the OAL. A PBA member was assigned to represent plaintiff because plaintiff had elected not to pay for a PBA lawyer or hire his own lawyer.

In April 2015, DOC moved in the OAL for summary disposition of the charges against plaintiff. PBA did not oppose that motion, nor did it inform plaintiff that the motion had been filed. On June 29, 2015, the ALJ granted DOC's motion, finding that plaintiff had violated regulations and DOC rules by testing positive for the use of an illegal drug, and upholding the decision to terminate plaintiff's employment with DOC.

The ALJ found that by testing positive for use of an illegal drug, defendant had engaged in conduct unbecoming of a public employee, N.J.A.C. 4A:2-2.3(a)(6), and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). The ALJ also found that plaintiff had violated DOC rules prohibiting the use of illegal drugs.

In upholding plaintiff's termination from employment, the ALJ expressly noted: "The penalty for the use of any controlled dangerous substance is

 A-4797-18T2

removal from the employment position, and preclusion from other law enforcement employment." While the ALJ also went on to consider the concept of progressive discipline, she ultimately held: "[T]here can be no conclusion but that removal is required. There can be no tolerance for the use of a medically unprescribed Schedule II [controlled dangerous substance] by a law-enforcement officer."

PBA did not file an exception to the ALJ's initial decision. Plaintiff did, however, seek reconsideration, arguing that he had been hospitalized when the ALJ issued her decision and he did not have an opportunity to be heard. On July 15, 2015, the Commission rejected plaintiff's argument for reconsideration and issued a final agency decision, in which it independently evaluated the record and adopted the ALJ's findings and legal conclusions. Accordingly, the Commission affirmed plaintiff's removal from employment with DOC.

In issuing its final determination, the Commission stated:

> Moreover, the facts as noted by the ALJ are not in dispute. The petitioner's urine specimen tested positive for benzoylecgonine, a metabolite of cocaine, a controlled dangerous substance. The laboratory finding was not contested, nor has petitioner proffered any explanation for the positive result. Accordingly, there exists no basis to disturb the Commission's decision.

4

Plaintiff again sought reconsideration, but the Commission rejected his arguments and issued another final determination on November 10, 2015.

In June 2017, plaintiff sued PBA contending that PBA had breached its duty to fairly represent him at his disciplinary proceedings. Plaintiff sought "economic compensatory damages for continued salary and benefits of employment[.]" Plaintiff also sought punitive damages and damages for pain, suffering, "emotional distress, anxiety, humiliation and reputational harm[.]"

Following the completion of discovery, PBA moved for summary judgment. For purposes of the motion, PBA conceded that it had failed to adequately represent plaintiff in the disciplinary proceedings. PBA asserted, however, that plaintiff had no evidence to show that PBA's failure caused him any harm. In that regard, PBA argued that plaintiff had no evidence to dispute the positive drug test and plaintiff had admitted he used cocaine within several days of the random drug test. PBA also argued that under a policy issued by the Attorney General, any law enforcement officers who tested positive for illegal drugs had to be terminated.

Plaintiff opposed the motion, primarily contending that if he had appeared before the ALJ, he would have been able to argue for a penalty less severe than termination. He asserted that he would have testified that when he tested

5

positive for cocaine use, he was under a great deal of stress because his mother was suffering from cancer and he was facing several financial and familial problems.

The trial court heard oral arguments on May 24, 2019. The court then granted summary judgment to PBA, concluding that plaintiff could not establish damages. In that regard, the court noted that plaintiff had no expert, and he needed an expert to tell a jury whether an ALJ could have imposed a penalty less than termination of his employment. Alternatively, the trial court ruled that the Attorney General's policy required that plaintiff be fired.

## II.

On appeal, plaintiff makes two arguments, contending the trial court erred in (1) holding that the Attorney General's policy required termination once plaintiff was found to have used illegal drugs; and (2) applying a legal malpractice standard. We are not persuaded by either of these arguments.

We review a grant of summary judgment using the same standard that governs the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable

A-4797-18T2

to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion court's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)); Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff has conceded that he has no defense to the charge of testing positive for the use of cocaine. Indeed, the record establishes that plaintiff has no evidence to dispute the positive drug test. He did not submit an expert report or any other evidence that would allow a factfinder to conclude that the drug test was not properly conducted and did not establish his use of cocaine.

Consequently, to show damages, plaintiff must establish a causal link between PBA's inadequate representation of him before the ALJ and his termination. In other words, unless plaintiff can show that the ALJ could and probably would have imposed a penalty less than termination, plaintiff cannot establish any damages from PBA's failure to adequately represent him before the ALJ.

The legal question presented is whether the Attorney General's policy allows an ALJ to impose a penalty other than termination. We hold that it does not. Since 2001, the Attorney General has issued a "Law Enforcement Drug Testing Policy" (the Attorney General's Policy). See Off. of the Att'y Gen., Attorney General's Law Enforcement Drug Testing Policy (2018), https://www.nj.gov/oag/dcj/njpdresources/pdfs/Drug-Test-Policy_2018-05.pdf. The Policy governs, among other things, random drug testing of law enforcement officers under the legal authority of the Attorney General and the penalty for testing positive. Id. at 3-4, 12. As a DOC corrections officer, plaintiff was subject to the Attorney General's Policy. N.J.S.A. 52:17B-97 to 117.

Both the version of the Policy in effect when plaintiff tested positive (the 2012 version) and the current version of the Policy (revised in 2018) state:

"When a sworn law enforcement officer tests positive for illegal drug use" the officer shall be administratively charged and, upon final disciplinary action, he or she "shall be terminated from employment as a law enforcement officer. . . The officer shall be permanently barred from future law enforcement employment in New Jersey." Attorney General's Law Enforcement Drug Testing Policy, at 12. We discern no ambiguity or leeway in the Attorney General's Policy. Following a disciplinary action, if a law enforcement officer is found to have tested positive for illegal drug use, the officer must be terminated.

Plaintiff argues that there is some leeway in imposing a disciplinary penalty because, in March 2018, the Attorney General issued Directive No. 2018-3 concerning "Statewide Mandatory Early Warning Systems." See Off. of the Att'y Gen., Directive No. 2018-3, Statewide Mandatory Early Warning Systems (2018), https://www.state.nj.us/lps/dcj/agguide/directives/ag-directive-2018-3.pdf. Plaintiff contends that Directive No. 2018-3 implies that a penalty less than termination can be imposed in a disciplinary action because the Directive includes a footnote that states:

> This Directive, and [Early Warning] Systems generally, are focused on corrective actions to remediate officer behavior and to provide assistance to the officer. This Directive and [Early Warning] Systems generally, do

9

not address disciplinary actions that might be warranted against an officer. Such disciplinary actions – to include the decision to suspend, terminate or, if applicable, charge an officer with criminal conduct – remain within the purview of the agency's internal affairs function, and may be imposed in accordance with existing internal affairs guidelines and applicable law, separate from and independent of the [Early Warning] System.

[Id. at 4 n.2.]

We disagree with plaintiff's interpretation of Directive 2018-3. The Directive addresses a wide range of potential problems law enforcement officers may be facing and is "designed to detect patterns and trends in police conduct before the conduct escalates." Id. at 1. Accordingly, the Directive addresses many actions or problems, including drug or alcohol abuse. The footnote plaintiff relies on was added at the end of a list of potential "[r]emedial/corrective action[s]" once "an officer has displayed the requisite number of performance indicators necessary to trigger the [Early Warning] System review process[.]" Id. at 3.

Accordingly, when read in context, the footnote does not supersede or change the Attorney General's Policy. Indeed, the footnote expressly states that the Directive and the Early Warning Systems "do not address disciplinary actions." Id. at 4 n.2. Such disciplinary actions can include discipline for

infractions other than testing positive for drug use. Hence, the reference to other types of disciplinary penalties makes sense in the footnote. The reference, however, does not supersede the clear language and mandate in the Attorney General's Policy.

Furthermore, there is no evidence that plaintiff was identified as having a problem under the Early Warning System. To the contrary, plaintiff was given a random drug test and he did not voluntarily disclose that he was using illegal drugs.

We also reject plaintiff's argument that the trial court erred in applying a legal malpractice standard in this action. First, the trial court did not really apply a legal malpractice standard. Instead, the trial court correctly recognized that plaintiff's claim was dependent on being able to show that had he appeared at the proceedings before the ALJ, he would have been able to convince the ALJ to impose a penalty less than termination. We have already construed the Attorney General's Policy to prohibit such an argument.

Nevertheless, even if the Attorney General's Policy did not clearly require plaintiff's termination, plaintiff would still have to present some evidence to convince a factfinder that the ALJ probably would have accepted plaintiff's argument and probably would have imposed a penalty less than termination. A

11

review of the record establishes that plaintiff has no evidence that would support such an argument. Instead, given the evidence in the record, plaintiff could have only asked the jury to speculate as to what might or might not have happened at the ALJ hearing.

It was within this context that the trial court discussed the need to establish a standard by which the ALJ could have been persuaded to impose a penalty less than termination. As we agree with the motion court's legal determination concerning the Attorney General's Policy, we need not reach this alternative ground used by the motion court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                                      A-4797-18T2